STATE OF CONNECTICUT *v.* KEITH
MICHAEL FOSTER
(SC 17780)

Rogers, C. J., and Norcott, Katz, Zarella and McLachlan, Js.

Argued March 23—officially released September 1, 2009

*William B. Westcott,* for the appellant (defendant).

*Harry Weller,* senior assistant state's attorney, with whom, on the brief, were *David Shepack,* state's attorney, and *Dawn Gallo,* assistant state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The defendant, Keith Michael Foster, appeals[1] from the judgment of conviction, rendered after a jury trial, of three counts of the crime of kidnapping in the first degree as an accessory in violation of General Statutes §§ 53a-92 (a) (2) and 53a-8, and one count each of the crimes of murder in violation of General Statutes § 53a-54a (a), felony murder in violation of General Statutes § 53a-54c, conspiracy to commit kidnapping in violation of General Statutes §§ 53a-92 (a) (2) and 53a-48 (a), sexual assault in the first degree as an accessory in violation of General Statutes (Rev. to 1997) § 53a-70 (a) (1) and § 53a-8, tampering with a witness as an accessory in violation of General Statutes §§ 53a-151 (a) and 53a-8, and tampering with physical evidence as an accessory in violation of General Statutes §§ 53a-155 (a) (1) and 53a-8. On appeal, the defendant claims that the trial court (1) improperly allowed the state to introduce hearsay evidence in violation of the Connecticut Code of Evidence and his right to confrontation under the sixth and fourteenth amendments to the United States constitution, (2) inadequately addressed an instance of juror misconduct in violation of his right to a trial by an impartial jury under the sixth and fourteenth amendments to the United States constitution, and article first, § 8, of the constitu-

---

[1] The defendant appealed directly to this court pursuant to General Statutes § 51-199 (b), which provides in relevant part: "The following matters shall be taken directly to the Supreme Court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years . . . ."

tion of Connecticut, and (3) diluted the state's burden of proof by improperly instructing the jury on his alibi defense. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In early October of 1997, the victim, M,[2] who was thirteen years old at the time, disclosed to her mother, C, that she had had sexual relationships with the defendant, who was twenty-one years old at the time, and Alan Walter, Jr., who was nineteen years old at the time. On October 9, 1997, C filed a complaint with the New Milford police department alleging that the defendant and Walter had sexually assaulted M. On October 15, 1997, M accompanied C to the New Milford police station where M submitted a written statement to Officer James Mullin, repeating her allegation that she had had a sexual relationship with Walter, and a verbal statement repeating her allegation that she had had a sexual relationship with the defendant.[3] On the basis of M's allegations, Mullin initiated a criminal investigation to determine whether the defendant and Walter had committed the crime of sexual assault or risk of injury to a child.

A few days after C filed her complaint with the New Milford police, the defendant learned of M's accusations. The defendant thereafter formed an agreement with seven coconspirators, namely, Walter, Deaneric Dupas, Ronald Rajcok, Jeffrey Boyette, Dorothy Hallas, Maggie Bennett and June Bates Seger, to abduct M and to assault her physically in retaliation for the complaints that M had made against Walter and the defendant.

---

[2] In accordance with our policy of protecting the privacy interests of victims of sexual assault, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[3] M returned to the police station on October 17, 1997, to give a written statement regarding her sexual relationship with the defendant. Although she verbally discussed this matter with Officer Mullin at that time, she did not complete her written statement before leaving.

On the afternoon of October 19, 1997, the defendant and his coconspirators followed C as she drove M to a grocery store in New Milford. At the store, M waited near C's car while C went inside to buy groceries. While C was inside the store, Bennett and Rajcok parked their separate vehicles near C's car. M approached Rajcok's car and engaged Rajcok in conversation. M eventually got into Rajcok's car with Rajcok and Boyette, and Rajcok drove to a secluded area on River Road in New Milford near the Housatonic River (river). On the way, M repeatedly asked Rajcok to return to the grocery store, but Rajcok refused.

The defendant and the other coconspirators met Rajcok, Boyette and M at the secluded spot on River Road. There, the eight coconspirators attacked M verbally and physically for between ten and twenty minutes. At one point, M broke from the group and attempted to escape, but Hallas and Seger dragged her back. Shortly thereafter, M was forced into Bennett's van, where the defendant, Walter and Boyette each took turns sexually assaulting her. Dupas and Walter then carried M down an embankment to the river. The defendant, Dupas and Walter held M's head underwater until she drowned.

With the assistance of the defendant and others in the group, Walter wrapped M's body in a blanket and secured the blanket with electrical tape, a chain and a padlock. The group drove M's body to the Fischel Marina (marina) in New Milford and dumped her into the river. The defendant thereafter disposed of M's clothing inside a washing machine that had been abandoned in the woods near the marina.

In a substitute information dated February 21, 2006, the state charged the defendant with three counts of kidnapping in the first degree as an accessory, and one count each of murder, murder as an accessory, felony murder, conspiracy to commit kidnapping in the first

degree, sexual assault in the first degree as an accessory, tampering with a witness as an accessory, and tampering with physical evidence as an accessory. The jury found the defendant guilty of all of the charges except murder as an accessory. The court sentenced the defendant to a total effective sentence of 110 years imprisonment. This appeal followed.

I

The defendant first claims that the trial court improperly allowed the state to adduce certain testimony in violation of § 8-2 of the Connecticut Code of Evidence and his right to confrontation under the sixth and fourteenth amendments to the United States constitution.[4] Specifically, the defendant claims that the trial court improperly allowed the state to adduce, over objection, the testimony of C and Officer Mullin regarding certain statements that M had made to them. The defendant argues that M's out-of-court statements were hearsay and that no hearsay exception applied. The defendant also seeks, under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[5] review of his unpreserved claim that the admission of the testimony regarding M's

---

[4] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

The sixth amendment right to confrontation is made applicable to the states through the due process clause of the fourteenth amendment to the United States constitution. E.g., *State* v. *Simpson*, 286 Conn. 634, 636 n.4, 945 A.2d 449 (2008).

[5] "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Fagan*, 280 Conn. 69, 89–90, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007).

statements violated his right to confrontation under the rule established in *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).[6] The state counters that M's statements were not admitted for the truth of the matter asserted, and, therefore, the testimony of C and Mullin was not inadmissible either on hearsay grounds or pursuant to the rule in *Crawford*. We agree with the state.

During the state's case-in-chief, C testified that, during a conversation with M in early October of 1997, M had disclosed to her that she had had sexual relationships with the defendant and Walter. Mullin subsequently testified that, on October 15 and 17, 1997, M had repeated those same allegations to him. The state elicited the testimony regarding M's statements not to prove that the defendant and Walter actually had had prior sexual relationships with M but merely to establish that M had accused them of having engaged in those relationships. The state contended that M's accusations, irrespective of their truth, were relevant to establish, inter alia, the defendant's motive for harming M, M's state of mind and the defendant's state of mind. Defense counsel objected to the testimony on hearsay grounds, but the court overruled the objection, concluding that the testimony did not contain inadmissible hearsay because M's statements were not being offered to prove the truth of the matter asserted. The court then issued a limiting instruction to the jury.

Our standard of review for the defendant's evidentiary claim is well settled. "To the extent [that] a trial

---

[6] "Under *Crawford* v. *Washington*, supra, 541 U.S. 68, the hearsay statements of an unavailable witness that are testimonial in nature may be admitted under the sixth amendment's confrontation clause only if the defendant has had a prior opportunity to cross-examine the declarant. Hearsay statements that are nontestimonial in nature are not governed by the confrontation clause, and their admissibility is governed solely by the rules of evidence." *State* v. *Slater*, 285 Conn. 162, 169–70, 939 A.2d 1105, cert. denied, 553 U.S. 1085, 128 S. Ct. 2885, 171 L. Ed. 2d 822 (2008).

court's admission of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review." *State* v. *Saucier*, 283 Conn. 207, 218, 926 A.2d 633 (2007). "We review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion." Id. Because the defendant challenges the trial court's characterization of certain evidence as non-hearsay, we exercise plenary review over the defendant's claim. See id.

" 'Hearsay' means a statement, other than one made by the declarant while testifying at the proceeding, offered in evidence to establish the truth of the matter asserted." Conn. Code Evid. § 8-1 (3). Hearsay is generally inadmissible unless an exception in the Code of Evidence, the General Statutes or the rules of practice applies. Conn. Code Evid. § 8-2.

In the present case, C and Mullin testified about statements that M, the declarant, made outside of the defendant's criminal trial. The state, however, offered the testimony regarding M's statements not to prove that the defendant and Walter had sexual relationships with M but solely to prove that M had made the statements to C and Mullin. The defendant largely ignores this point and spends a great deal of energy disputing whether M's statements fit the hearsay exception for statements of then-existing mental or emotional condition;[7] see Conn. Code Evid. § 8-3 (4); arguing that those statements had no tendency to prove either the declarant's or the defendant's state of mind. No hearsay exception is necessary in this case, however, because M's out-of-

---

[7] This exception commonly is "referred to as the 'state-of-mind' exception to the hearsay rule." Conn. Code Evid. § 8-3 (4), commentary.

court statements were not offered to prove the truth of the matter asserted. See, e.g., C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 8.6, p. 469. Moreover, the discretionary question of the relevance of M's statements, an issue that the defendant has failed to preserve and has not raised properly in this appeal, presents a completely different issue than the issue presented by this appeal, namely, whether M's statements are hearsay under the Code of Evidence.

We conclude that the trial court correctly determined that M's statements were not hearsay because the state did not offer them to establish the truth of the matter asserted. Furthermore, because the defendant's unpreserved constitutional claim is contingent on our conclusion that M's statements were hearsay, we also reject the defendant's claim that, under *Crawford*, the admission of C's and Mullin's testimony regarding those statements violated his right to confrontation. See *Crawford* v. *Washington*, supra, 541 U.S. 59–60 n.9 (confrontation clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted").

## II

We next address the defendant's claim that the trial court failed to make an adequate inquiry into the effect of a juror's misconduct during the second day of trial. Specifically, the defendant claims that the trial court failed to investigate adequately whether that juror's misconduct had affected the impartiality of the remaining jurors. He argues that the trial court violated his right to a trial by an impartial jury under the sixth and fourteenth amendments to the United States constitution,[8]

[8] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a . . . trial . . . by an impartial jury . . . ."

"The sixth amendment right to a trial by an impartial jury is made applicable to the states through the due process clause of the fourteenth amendment to the United States constitution. . . . [In addition] the United States

and under article first, § 8, of the constitution of Connecticut.[9] The defendant's claim is unpreserved, and he seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40. The state argues that the defendant is not entitled to *Golding* review because he waived his claim before the trial court. The state further argues that, even if the defendant did not waive his claim, the defendant cannot establish either a constitutional violation or harmfulness. We agree with the state's first argument that the defendant waived his claim.

The following additional facts are relevant to the defendant's claim. During the second day of trial, the trial court excused the jury to address an objection that defense counsel had raised. Shortly thereafter, the court clerk informed the court that one of the jurors had made a comment to the court clerk about the fairness of the proceedings and the conduct of defense counsel. Outside of the presence of the other jurors, the trial court examined the juror on the substance of her comment and whether she shared her feelings with the other jurors. The juror responded that she had told other jurors that she had "made a complaint" about defense counsel but had not shared the details of her complaint with them. On the basis of her response, the trial court dismissed the juror.

In light of that juror's misconduct, the trial court proposed to the parties that it would make a "strong statement" to the jury regarding the "role of attorneys and cross-examination and the adversarial system."

Supreme Court has concluded that the due process clause of the fourteenth amendment independently require[s] the impartiality of any jury empaneled to try a cause . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *West*, 274 Conn. 605, 647 n.45, 877 A.2d 787, cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005).

[9] The constitution of Connecticut, article first, § 8, provides in relevant part: "In all criminal prosecutions, the accused shall have a right . . . in all prosecutions . . . to a . . . trial by an impartial jury. . . ."

When the trial court asked whether its proposed instruction would be sufficient, defense counsel requested "a general inquiry" into whether the dismissed juror had shared anything with the other jurors. After the remaining jurors returned to the courtroom, the trial court asked them whether the dismissed juror "in any way express[ed] her opinions to any of [them] about the conduct of the trial." None of the jurors responded. The trial court then issued its proposed instruction, and the trial continued without further comment or objection by the defense.

In *State* v. *Fabricatore*, 281 Conn. 469, 915 A.2d 872 (2007), we stated that, "[i]n the usual *Golding* situation, the defendant raises a claim on appeal [that], while not preserved at trial, at least was not waived at trial." (Internal quotation marks omitted.) Id., 478. We generally do not review unpreserved, waived claims. E.g., *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 70, 967 A.2d 41 (2009). "To reach a contrary conclusion would result in an ambush of the trial court by permitting the defendant to raise a claim on appeal that his or her counsel expressly had abandoned in the trial court." *State* v. *Holness*, 289 Conn. 535, 543, 958 A.2d 754 (2008).

"It is well settled that a criminal defendant may waive rights guaranteed to him under the constitution. . . . The mechanism by which a right may be waived, however, varies according to the right at stake. . . . For certain fundamental rights, the defendant must personally make an informed waiver. . . . For other rights, however, waiver may be effected by action of counsel. . . . When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal. See, e.g., [id., 544–45] (holding that defendant waived [claim under *Crawford* v. *Washington*, supra, 541 U.S. 36, that trial court improperly admitted recording of

conversation in violation of confrontation clause of federal constitution] when counsel agreed to limiting instruction regarding hearsay statements introduced by state on cross-examination); *State* v. *Fabricatore*, supra, [281 Conn. 481] (concluding [that] defendant waived claim when [defense counsel] not only failed to object to jury instruction but also expressed satisfaction with it and argued that it was proper)." (Citations omitted; internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, supra, 291 Conn. 71–72.

In cases of juror misconduct, "[t]he question is whether . . . the misconduct has prejudiced the defendant to the extent that he has not received a fair trial. . . . [When] . . . the trial court was in no way responsible for the juror misconduct . . . we have repeatedly held that a defendant who offers proof of juror misconduct bears the burden of proving that actual prejudice resulted from that misconduct." (Internal quotation marks omitted.) *State* v. *Respass*, 256 Conn. 164, 191, 770 A.2d 471, cert. denied, 534 U.S. 1002, 122 S. Ct. 478, 151 L. Ed. 2d 392 (2001). In the present case, in which the trial court clearly was not responsible for the conduct that led to the juror's dismissal, the defendant shouldered the burden of establishing any resulting prejudice.

In the face of the dismissed juror's misconduct, defense counsel expressed his assent to the special instruction that the trial court proposed but indicated his dissatisfaction with the trial court's initial inquiry, which was limited to a brief examination of the dismissed juror. Defense counsel then suggested that the trial court should conduct "a general inquiry" of the remaining jurors into whether the dismissed juror had shared the substance of her complaint with any of them. The trial court agreed and conducted the inquiry that defense counsel had requested.

Inasmuch as the defense bore the burden of establishing prejudice and defense counsel informed the trial court that "a general inquiry" would be a sufficient means of accomplishing that task, we decline to review the defendant's claim that a more searching inquiry was necessary to preserve his right to trial by an impartial jury. "To allow the [defendant] to seek reversal now that his trial strategy has failed would amount to allowing him to induce potentially harmful error, and then ambush the state with that claim on appeal." (Internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, supra, 291 Conn. 73. We conclude, therefore, that the defendant waived his claim, and we decline to review it.

## III

The defendant's final claim is that the trial court improperly instructed the jury on his alibi defense. Specifically, the defendant claims that the trial court instructed the jury in such a manner that it diluted the state's burden of proving beyond a reasonable doubt that the defendant was present at the crime scene. The defendant's claim is not preserved, and he again seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40. The state asserts that the defendant waived his claim when defense counsel accepted the trial court's supplemental instruction with respect to his alibi defense. The state also argues that the trial court's instructions, when read in their entirety, were not misleading. We agree with the state that the defendant waived his claim.

During its initial charge, the court instructed the jury as follows: "The defendant has presented what is commonly known as an alibi defense. This is a rebuttal by the defendant of the state's attempt to prove that the defendant was present at the scene of the crime and committed or participated in the acts charged. It is up to the state to prove the defendant's guilt beyond a

reasonable doubt, which includes all of the elements of a crime, including the defendant's presence at a stated place and the defendant's committing or participating in acts at that place at a given time. The alibi evidence that the defendant has placed before you seeks to convince you that the defendant was elsewhere at the time and therefore could not possibly have committed the acts charged. Whether you believe that the defendant was or was not so present, and therefore could or could not have done what the defendant has been charged with doing, is for you to decide along with all of the other facts of the case. Remember, the defendant does not have to prove his claim that he was elsewhere. It is sufficient if, on considering all of the evidence, there arises in your minds a reasonable doubt as to the defendant's presence at the scene of the crime when it was committed. If you have such a doubt, then the defendant is entitled to be found not guilty."

After giving numerous additional instructions and recessing for the evening, the court completed its initial charge the following day. At the end of the court's initial charge, defense counsel expressly stated that the trial court's instructions were proper but requested that the trial court remind the jury of its obligation to determine that the defendant was at the crime scene before it could find the defendant guilty.[10] The court proposed,

---

[10] Specifically, defense counsel stated in relevant part: "Your Honor, I just have a request. I don't feel there's any error—or not error—but any mistake made by the court. But I would like the court to tell the jury that they don't get to these charges. In other words, they have to find out factually—they have to analyze the testimony—it may be self-evident but may have lost sight of that in the fact that [for] almost the last two hours, it's [been] about kidnapping, murder, conspiracy. They don't get to look at those charges unless they determine that [the defendant] was there and was present to commit any of these alleged crimes that he's charged with. So, I think that, in a case like this, where the issue is was he there, that reading for two hours the charges, defining the law—of course, it's necessary you have to do that, but I don't know if the jury kind of said, well, I won't concentrate on this. . . ."

and defense counsel offered no objection to, a supplemental instruction that essentially repeated a portion of its initial alibi instruction.[11] The trial court then gave the proposed supplemental instruction to the jury.[12] Defense counsel did not object to the court's supplemental instruction.

In *State* v. *Jones*, 193 Conn. 70, 475 A.2d 1087 (1984), the trial court improperly instructed the jury on the definition of "insanity," to which defense counsel timely "excepted." Id., 87. After consulting with defense counsel, the court gave a supplemental instruction with the correct statutory standard. Id. Defense counsel raised no further objection to either the initial charge or the supplemental instruction. Id., 87–88.

On appeal, we stated that, "when viewed in the context of defense counsel's participation in fashioning the supplement[al] charge, [his] failure to except supports the . . . conclusion that the defendant accepted the supplement[al] charge as correct." Id., 88–89. Accordingly, we concluded that "the defendant's conduct at trial indicated his acceptance of the supplemental charge as sufficient to cure the initial error." Id., 86.

In *State* v. *Whitford*, 260 Conn. 610, 799 A.2d 1034 (2002), defense counsel objected to the trial court's initial instruction on the use of deadly physical force in connection with a claim of self-defense. See id., 632. After receiving input from defense counsel, the trial

---

[11] Specifically, the trial court proposed the following instruction: "An element of each of these counts is the identity of the defendant as the person charged. Obviously, as an element, the identity of the defendant as involved in each count must be proven beyond a reasonable doubt."

[12] The trial court instructed the jury as follows: "When you talk for an hour and a half, almost two hours, about the technical aspects of the trial, it's easy to lose sight of the fact that one of the elements that has to be proven is the identity of the defendant as the perpetrator. I mean, that's an element that has to be proven beyond a reasonable doubt in addition to all the other technical elements of the crimes in order to return a verdict of guilty."

court issued a supplemental instruction, to which defense counsel did not object. Id., 632–33. Relying on *Jones*, we stated: "By agreeing to the proposed instruction, and by failing to object to the supplemental charge as given, the defendant effectively conceded that it was sufficient to cure any previous impropriety. He has thus waived any right to reassert on appeal the very challenge that prompted the supplemental instruction at trial." Id., 633.

We see no relevant distinction between the circumstances presented in this case and the circumstances presented in both *Jones* and *Whitford*. In fact, defense counsel in the present case not only failed to object to the court's supplemental instruction but also expressed his satisfaction with the trial court's initial instructions.[13] Thus, we are presented with another situation in which the defendant has waived his claim by virtue of defense counsel's assent to the court's instructions. We therefore decline to review the defendant's claim.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[13] On appeal, the defendant claims that both the initial and supplemental instructions were improper and that the trial court should have included a "more illuminative" instruction to the effect that the state was required to disprove the defendant's alibi beyond a reasonable doubt. Despite the defendant's characterization, we view his proposed instruction and the trial court's instructions, in essence, as two sides of the same coin.