STATE OF CONNECTICUT *v.* RODNEY HANKERSON
(AC 30738)

Gruendel, Harper and Pellegrino, Js.

Argued September 14—officially released December 15, 2009

*Brendon P. Levesque*, special public defender, with whom were *Michael S. Taylor* and, on the brief, *Karen*

*L. Dowd* and *Daniel J. Krisch,* for the appellant (defendant).

*Melissa L. Streeto,* assistant state's attorney, with whom, on the brief, was *Scott J. Murphy,* state's attorney, for the appellee (state).

HARPER, J. The defendant, Rodney Hankerson, appeals from the judgment of conviction, rendered after a jury trial, of felony murder in violation of General Statutes § 53a-54c, robbery in the first degree in violation of General Statutes § 53a-134 (a) (1) and robbery in the first degree in violation of General Statutes § 53a-134 (a) (3).[1] The defendant claims that the court failed to explain the doctrine of proximate causation adequately in its instruction as to the crime of felony murder. We decline to review the claim and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On September 22, 2005, the victim, Luis Bruno, a drug dealer, had agreed to purchase a large quantity of cocaine from Herman Apodaca for $60,000. They agreed to complete the sale on September 24, 2005, at the victim's apartment in New Britain. On that date, the defendant, Apodaca and Eduardo Davila drove to the victim's apartment from New York. Upon their arrival, the defendant, carrying a large bag, entered the victim's apartment with Davila. Apodaca followed the men into the apartment soon thereafter. Several minutes later, Apodaca exited the apartment carrying a plastic bag

---

[1] The court imposed a total effective sentence of sixty years incarceration. The jury returned a verdict of not guilty as to the crimes of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 and 53a-48, larceny in the first degree in violation of General Statutes § 53a-122 and conspiracy to commit larceny in the first degree in violation of General Statutes §§ 53a-122 and 53a-48, of which the defendant also stood charged.

stuffed with money. Thereafter, the defendant and Davila exited the apartment. Both men had bloodstains on their clothing, and the defendant was carrying the same bag that he had carried into the apartment.

From a vantage point outside of the victim's apartment, a friend of the victim, Raul Cruz, observed the defendant, Apodaca and Davila enter and leave the apartment. Upon observing the defendant and Davila leave the apartment, Cruz heard the victim calling for help. He approached the door to the apartment to find the victim lying on his kitchen floor, covered in blood. He then observed the defendant and Davila quickly enter a van and drive away from the scene. Cruz brandished a gun and fired a gunshot at the van, to no avail. By this time, Apodaca also had driven away from the scene in an automobile. The victim had been stabbed multiple times with various knives and died soon thereafter.[2]

General Statutes § 53a-54c provides in relevant part: "A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery . . . and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ." The defendant claims that the court's instruction regarding the crime was deficient because it is reasonably possible

---

[2] During his trial testimony, the defendant testified that he had accompanied Apodaca and Davila to New Britain on September 24, 2005, unaware of any planned drug sale to the victim. The defendant testified that he had entered the victim's apartment with Apodaca, at which time he discovered Davila fighting with the victim. The defendant recalled that he had been struck in the face during an attempt to separate Davila and the victim and that, when he had regained the ability to perceive what was transpiring, Apodaca was gone from the scene and Davila was "on top of [the victim] stabbing him repeatedly." The defendant also testified that he did not harm the victim and that Davila compelled him at gunpoint not to flee the victim's kitchen and to carry a bag from the apartment.

that it misled the jury with regard to the essential element that the victim's death was caused in the course of and *in furtherance of* the crime of robbery or flight therefrom. Essentially, the defendant argues that the court did not adequately explain in what manner the victim's death must be causally connected to his criminal activity. The defendant, acknowledging that he did not take an exception to the court's charge, affirmatively requests review of his claim under the doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two *Golding* requirements involve whether the claim is reviewable . . . and the second two involve whether there was constitutional error requiring a new trial. . . . [I]n the usual *Golding* situation, the defendant raises a claim on appeal [that], while not preserved at trial, at least was not waived at trial. . . . [A] constitutional claim that has been waived does not satisfy the third prong of the *Golding* test because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial . . . . To reach a contrary conclusion would result in an ambush of the trial court by permitting the defendant to raise a claim on appeal that his or her counsel expressly had abandoned in the trial court."

(Citations omitted; internal quotation marks omitted.) *State* v. *Holness*, 289 Conn. 535, 542–43, 958 A.2d 754 (2008).

Preliminarily, the state rebuts the defendant's claim by asserting that the defendant cannot prevail under *Golding* because he waived any objection to the propriety of the instruction challenged in this appeal. The state relies on the following facts, all of which are supported by the record. The defendant did not submit a written request to charge covering the instructional language at issue in this claim. Also, he did not take exception to the court's charge on this ground. Practice Book § 42-16 provides in relevant part: "An appellate court shall not be bound to consider error as to the giving of, or failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of exception. . . ."

Prior to delivering its charge to the jury, the court held a charge conference, on the record, with the parties. During the conference, the court discussed several subjects dealt with in its proposed charge as well as several subjects covered in the defendant's written request to charge. The specific instruction at issue in this claim was not a subject of the conference. During its charge, the court instructed the jury that the state alleged that on September 24, 2005, the defendant, acting alone or with one or more persons, committed or attempted to commit the crime of robbery and, in the course of and in furtherance of that crime or the flight therefrom, he or another person caused the victim's death. The court discussed the elements of the crime of felony murder, stating in relevant part: "The second element is that the actions of the defendant or another participant in the crime of robbery in the first degree

. . . were the proximate cause of the death of [the victim]. The state must prove beyond a reasonable doubt that the defendant, or another participant, caused death. Proximate cause does not necessarily mean the last act of cause, or the act in point of time nearest to death. The concept of proximate cause incorporates the notion that an accused may be charged with a criminal offense even though his acts were not the immediate cause of death. It does not matter whether this particular kind of harm that results from the defendant's act [was] intended by the defendant. When death is a foreseeable and natural result of the defendant's conduct, the law considers the chain of legal causation unbroken and holds the defendant criminally responsible.

"The third element is that the defendant or another participant caused the death while in the course of and in furtherance of the commission or attempted commission of the crime of robbery in the first degree and in the course of carrying out its objective, the death was caused. In the course of the robbery means during any part of the defendant's participation in the robbery. Thus, the death of [the victim] must have occurred somewhere within the time span of the occurrence of the facts which constitute the robbery. In furtherance of the robbery means that the killing must in some way be causally connected to or as a result of the robbery, or of flight from the robbery. The actions of the defendant that caused the death of [the victim] must be done to aid the robbery in some way or to further the purpose of the robbery."

Later, during jury deliberations, the jury sent a note to the court inquiring whether a finding of guilty on the robbery count required a finding of guilty as to the felony murder count. Upon receiving the note, the court informed the jury that it would respond to the note only after discussing the matter with the parties. The court discussed the inquiry with counsel and proposed

a supplemental instruction. Specifically, the court proposed responding to the jury's inquiry by answering it in the negative and simply repeating the felony murder instruction that it had delivered in its initial charge. In discussing the proper response to the jury's inquiry, the defendant's counsel noted that, in its initial instruction to the jury concerning the crime, the court had, at several points, used the phrase "immediate flight therefrom," as opposed to "flight therefrom," in explaining the elements of felony murder. The defendant's attorney requested that the court rephrase the instruction on this limited ground. The court discussed its initial instruction and considered the defendant's request. The court concluded that its misstatement did not prejudice the defendant in any way but, in fact, placed a slightly higher burden of proof on the state. The court declined the request to correct its instruction on this ground. The issue raised by the defendant was related to the court's supplemental charge but is unrelated to the instructional claim raised here. Beyond noting that the court inadvertently had added the word "immediate" to its instruction concerning flight, the defendant did not raise any objection to the language used in the initial charge. Noting this objection by the defendant to its initial charge, the court asked counsel for the defendant and the state whether there was any other objection to its proposed supplemental charge. The defendant's counsel replied: "No, Your Honor."

Thereafter, the court summoned the jury to the courtroom and delivered its supplemental instruction. The court instructed the jury that a finding of guilt with regard to the robbery charge did not require a finding of guilt with regard to the felony murder charge. The court stated that each count at issue in the case was separate and distinct and contained elements that must be proven beyond a reasonable doubt. The court then reiterated the felony murder instruction that it had

delivered in its initial charge. After delivering this supplemental instruction, the court asked the defendant's attorney if the defense took exception to the instruction. The defendant's attorney replied: "No, Your Honor."

In *State* v. *Ebron*, 292 Conn. 656, 682, 975 A.2d 17 (2009), our Supreme Court held that a party will not be held to have waived a claim of instructional error unless it is shown that he "actively induced the trial court to give the . . . instruction that he . . . challenges on appeal . . . ." (Citation omitted.) Likewise, the court reasoned that a party will have waived an objection to an instruction only if it has "actively induce[d] the trial court to act on the challenged portion of the instruction." Id., 680. In a recent case, *State* v. *Foster*, 293 Conn. 327, 339–42, 977 A.2d 199 (2009), our Supreme Court considered whether a defendant had waived a claim of instructional error under procedural facts materially similar to those in the present case. In *Foster*, the defendant challenged on appeal the trial court's alibi instruction. Id., 339. The Supreme Court noted that, at trial, defense counsel had not objected to the court's initial charge and had expressly stated that the court's instructions were proper. Id., 340. Following the initial charge, the defendant prompted the court to deliver a supplemental instruction, related to the alibi defense. Id. "The court proposed, and defense counsel offered no objection to, a supplemental instruction that essentially repeated a portion of its initial alibi instruction. The trial court then gave the proposed supplemental instruction to the jury. Defense counsel did not object to the court's supplemental instruction." Id., 340–41. The Supreme Court in *Foster* discussed and relied on its prior decisions in *State* v. *Whitford*, 260 Conn. 610, 632–33, 799 A.2d 1034 (2002), and *State* v. *Jones*, 193 Conn. 70, 86–89, 475 A.2d 1087 (1984), and concluded that the failure of defense counsel to object

to the supplemental instruction that had been proposed by the court indicated "defense counsel's assent to the court's instructions" and, thus, constituted waiver of any objection related thereto. *State* v. *Foster*, supra, 342.[3]

In the present case, the defendant's counsel did not object to the court's initial charge as it relates to this claim. After the jury's note necessitated a supplemental instruction related to the felony murder instruction, the court discussed the matter with counsel. The court proposed, and defense counsel offered no relevant

---

[3] We conclude that the relevant procedural facts of *Foster* are materially similar to those of the present case because, in both cases, the defendant to some extent had participated in the creation of the supplemental instruction being challenged on appeal and had not objected to such instruction after the court delivered it to the jury. We recognize that, unlike the present case, the defendant in *Foster* also had expressed his satisfaction with the court's initial instructions, which mirrored the supplemental instruction provided to the jury, and had requested that the court deliver the supplemental instruction at issue on appeal. *State* v. *Foster*, supra, 293 Conn. 340, 342. Here, the defendant did not take exception to the court's initial charge on this ground, and the court delivered the supplemental instruction in response to an inquiry from the jury, not at the defendant's request.

We do not view these factual differences as material to our analysis for several reasons. First, in concluding that the defendant had waived his objection to the court's supplemental instruction, our Supreme Court in *Foster* focused almost exclusively on the facts that the defendant had participated to some extent in the fashioning of the supplemental instruction and had not objected to such instruction after the court had delivered it to the jury. Id., 341–42. In concluding that the waiver rule applied, the court relied heavily on its prior decisions in *Jones* and *Whitford*, noting that in both of those cases, in which the court had applied the waiver rule, defense counsel had objected to the court's initial instruction to the jury. Id., 341. The *Foster* court concluded that it "[saw] no relevant distinction between the circumstances presented in this case and the circumstances presented in both *Jones* and *Whitford*." Id., 342. Second, it does not appear that the fact that the defendant in *Foster* had requested the supplemental instruction was a dispositive factor, or even an important factor, in the court's analysis. Following *Jones* and *Whitford*, in which defense counsel's objection to the court's initial instruction occasioned the supplemental instruction, the court in *Foster* appears to have relied on the fact that the defendant had failed to object to the supplemental instruction after having participated in its creation.

objection to, a supplemental instruction that essentially repeated the portion of the initial charge that the defendant challenges in this appeal. The court then delivered the proposed supplemental instruction to the jury. Defense counsel did not object to the court's supplemental instruction.

Following *Foster*, and the cases cited therein, we conclude that the defendant waived this claim. Following the jury's written inquiry, the court discussed this portion of its initial charge with counsel and the defendant's counsel acquiesced to the substance of the instruction that the defendant now challenges on appeal, affirmatively inducing the court to retain the instruction in its supplemental charge. The claim, having been waived, fails under *Golding*'s third prong.

The judgment is affirmed.

In this opinion the other judges concurred.