# STATE OF CONNECTICUT *v.* EUGENE DAVIS
## (SC 18537)

Rogers, C. J., and Palmer, Vertefeuille, Zarella and McLachlan, Js.*

---

\* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued April 29—officially released August 24, 2010

*G. Douglas Nash*, special public defender, for the appellant (defendant).

*Raheem L. Mullins*, assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Richard Colangelo*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The defendant, Eugene Davis, appeals[1] from the judgments of conviction, rendered after a jury trial, of two counts of assault in the first degree as a principal or accessory in violation of General Statutes §§ 53a-59 (a) (5)[2] and 53a-8 (a),[3] and sentence enhancement for two counts of commission of a class A, B or C felony with a firearm in violation General Statutes § 53-202k,[4] stemming from his alleged participation with his codefendant, Michael Franklin, in two shooting incidents involving the victim, Elliot Snider, one of which occurred on May 30, 2005, and the other on July 3,

---

[1] The defendant appealed to the Appellate Court from the judgments of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm."

[3] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[4] General Statutes § 53-202k provides: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3, except an assault weapon, as defined in section 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

2005.[5] On appeal, the defendant claims that the trial court improperly excluded certain impeachment evidence and unduly restricted his attorney's cross-examination of the victim in violation of evidentiary law and his rights to confrontation, to compulsory process and to present a defense under the sixth and fourteenth amendments to the United States constitution.[6] The state responds that the trial court's evidentiary rulings were proper because each of the defendant's claims of alleged impropriety involves the trial court's exclusion of inadmissible hearsay or patently irrelevant evidence. Accordingly, the state argues that the defendant was not deprived of his constitutional rights. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. On May 30, 2005, at approximately 12 p.m., the victim and his friend, Patrick Priest, witnessed a fight between two men, Carlos and Marley,[7] at Neon Park in the city of Norwalk. During the fight, Carlos ended up on the ground bleeding. The victim attempted to break up the fight, at which time the defendant arrived with Franklin. The defendant and Franklin argued with the victim over what they perceived as the victim's participation in the beating of Carlos. Even though the victim attempted to explain that he was trying to stop the

---

[5] The defendant also was charged with being a persistent dangerous felony offender under General Statutes (Rev. to 2005) § 53a-40 (a) (1) (A). The defendant pleaded guilty to this charge.

[6] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . [and] to have compulsory process for obtaining witnesses in his favor . . . ."

The sixth amendment rights to confrontation, to compulsory process and to present a defense are made applicable to state prosecutions through the due process clause of the fourteenth amendment to the United States constitution. See, e.g., *Crane* v. *Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986); *State* v. *Wright*, 273 Conn. 418, 423–24 n.5, 870 A.2d 1039 (2005).

[7] The surnames of Carlos and Marley are not apparent from the record.

fight, the defendant and Franklin angrily left the park with Carlos. The victim remained at the park with Priest.

Within ten to fifteen minutes, the defendant and Franklin returned to the park driving a black Acura. The defendant got out of the driver's side of the vehicle and approached the victim, accusing him of having "a problem" with his friend, Carlos. The victim attempted to explain that he did not have a problem with Carlos, when Franklin exited from the passenger side of the vehicle with a bandana covering his face and a gun in his hand. Franklin chased the victim through the park and fired four to five gunshots at him. One of the bullets pierced the victim's right buttock. After shooting the victim, Franklin got back into the Acura and drove away with the defendant.

The victim made his way to a halfway house, where he asked someone to call an ambulance. He was "frustrated," "aggravated," and "panick[ed]" because this was his first gunshot wound, and he "didn't know how to react." The police arrived soon afterward and asked the victim if he knew who had shot him. Although he knew his assailants, the victim replied "[n]o" because, among other things, he "fear[ed] for [his] life at that time." Shortly thereafter, the victim was transported by ambulance to a hospital where he remained for two days.

Approximately one month later, on July 3, 2005, the victim and several friends attended a fireworks event at Veteran's Memorial Park in Norwalk. At around 9 p.m., while the group was walking across a bridge, the victim spotted Franklin driving up in a blue Dodge Neon. Franklin parked the car in the middle of the street, and the victim yelled to him to get out of the car and "fight a fair one . . . ." While the victim was yelling at Franklin, the defendant approached the victim from behind and said, "I'm out [of] the car . . . ." As

soon as the victim turned around and saw the defendant, the defendant fired a gunshot into the victim's left arm. The defendant then fired a second shot into the victim's back and a third shot into one of the victim's legs. Thereafter, the defendant fled on foot and Franklin drove off in the car.

When the police arrived, the victim told them that the defendant had shot him. The victim also told the police that Franklin had shot him on May 30, 2005. The victim then was transported to the hospital by ambulance, where he underwent surgery for his injuries. As a result of the shooting, the victim sustained several permanent injuries, including paralysis in one of his legs from the knee down.

The Norwalk police later located the black Acura used in the May 30, 2005 shooting outside of a residence in Bridgeport where they found and arrested the defendant and Franklin. The defendant's mother owned the Acura. The defendant subsequently was charged with two counts of assault in the first degree as a principal or accessory in violation of §§ 53a-59 (a) (5) and 53a-8 (a), and two counts of commission of a class A, B or C felony with a firearm in violation of § 53-202k. The jury found the defendant guilty, and the trial court sentenced the defendant to a total effective term of twenty years incarceration. This appeal followed. Additional facts and procedural history will be set forth as necessary.

On appeal, the defendant claims that the trial court improperly excluded certain impeachment evidence and unduly restricted his attorney's cross-examination of the victim in violation of the laws of evidence and his rights to confrontation, to compulsory process and to present a defense under the sixth and fourteenth amendments to the United States constitution. Specifically, the defendant claims that the trial court improp-

erly (1) precluded his attorney from cross-examining the victim as to the victim's possible hope for or expectation of favorable treatment from the state with respect to the victim's pending felony charges in exchange for his testimony in the present case, and excluded from evidence, as inadmissible hearsay, a transcript from a hearing in one of the victim's pending criminal cases in which the victim's attorney indicated that she had secured favorable treatment or hoped for a favorable disposition in that case, (2) precluded his attorney from cross-examining the victim about his relationship with Jamie Hunt, who was the victim's girlfriend at the time of the shootings, after the victim testified that one of the reasons that he did not immediately inform the police of the identities of his assailants in the May 30, 2005 shooting was that Hunt was "close to their family,"[8] and the victim "didn't want to mess that up with her," (3) precluded his attorney from impeaching the victim with the facts underlying his felony conviction of possession of a weapon in a motor vehicle and with the name of that offense after the victim testified that he did not carry a gun on May 30, 2005, or "on other days," and (4) precluded his attorney from questioning the victim about his abusive and profane conduct before a Superior Court judge in 2004 and about a profane tattoo that the victim allegedly had, which concerned his disdain for the police.

We begin by setting forth the following legal principles that guide our analysis of the defendant's claims. "The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness'

---

[8] It is unclear from the victim's testimony whether Hunt was close to the defendant's family or Franklin's family.

motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . .

"Impeachment of a witness for motive, bias and interest may also be accomplished by the introduction of extrinsic evidence. . . . The same rule that applies to the right to cross-examine applies with respect to extrinsic evidence to show motive, bias and interest; proof of the main facts is a matter of right, but the extent of the proof of details lies in the court's discretion. . . . The right of confrontation is preserved if defense counsel is permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . .

"Although it is within the trial court's discretion to determine the extent of cross-examination and the admissibility of evidence, the preclusion of sufficient inquiry into a particular matter tending to show motive, bias and interest may result in a violation of the constitutional requirements [of the confrontation clause] of the sixth amendment." (Citations omitted; internal quotation marks omitted.) *State* v. *Colton*, 227 Conn. 231, 248–49, 630 A.2d 577 (1993). "Further, the exclusion of defense evidence may deprive the defendant of his constitutional right to present a defense." *State* v. *DeJesus*, 270 Conn. 826, 835, 856 A.2d 345 (2004).

"[T]he confrontation clause does not [however] suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination." (Internal quotation marks omitted.) *State* v. *Brown*, 273 Conn. 330, 338–39, 869 A.2d 1224 (2005). Rather, "[a] defendant is . . . bound by the rules of evidence in presenting a defense. . . . Although exclusionary rules of evidence cannot be applied mechanistically to

deprive a defendant of his rights, the [federal] constitution does not require that a defendant be permitted to present every piece of evidence he wishes." (Internal quotation marks omitted.) *State* v. *Winot*, 294 Conn. 753, 775–76, 988 A.2d 188 (2010). To the contrary, "[t]he [c]onfrontation [c]lause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Internal quotation marks omitted.) *State* v. *Brown*, supra, 338. Thus, "[i]f the proffered evidence is not relevant [or constitutes inadmissible hearsay], the defendant's right to confrontation is not affected, and the evidence was properly excluded." (Internal quotation marks omitted.) *State* v. *Winot*, supra, 776; see also *State* v. *Tutson*, 278 Conn. 715, 746–51, 899 A.2d 598 (2006) (no violation of constitutional right to present defense when trial court properly excluded evidence on hearsay grounds); *State* v. *Colon*, 272 Conn. 106, 198–99, 864 A.2d 666 (2004) ("our law is clear that a defendant may introduce only relevant evidence, and, if the proffered evidence is not relevant, its exclusion is proper and the defendant's right is not violated" [internal quotation marks omitted]), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005).

In analyzing the defendant's claims, we first review the trial court's evidentiary rulings. Our standard of review for evidentiary claims is well settled. "To the extent [that] a trial court's admission of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review." *State* v. *Saucier*, 283 Conn. 207, 218, 926 A.2d 633 (2007). "We review the trial court's decision to admit [or exclude] evidence, if premised on a correct

view of the law, however, for an abuse of discretion."
Id. The "trial court has wide discretion to determine
the relevancy of evidence and the scope of cross-exami-
nation." (Internal quotation marks omitted.) *State* v.
*Brown*, supra, 273 Conn. 339. Thus, "[w]e will make
every reasonable presumption in favor of upholding the
trial court's ruling[s] [on these bases] . . . ." (Internal
quotation marks omitted.) *State* v. *Cecil J.*, 291 Conn.
813, 818, 970 A.2d 710 (2009). "In determining whether
there has been an abuse of discretion, the ultimate
issue is whether the court . . . reasonably [could have]
conclude[d] as it did." (Internal quotation marks omit-
ted.) *State* v. *Orr*, 291 Conn. 642, 667, 969 A.2d 750
(2009). If, after reviewing the trial court's evidentiary
rulings, we conclude that the trial court properly
excluded the proffered evidence, then the defendant's
constitutional claims necessarily fail. See, e.g., *State* v.
*Winot*, supra, 294 Conn. 776. If, however, we conclude
that the trial court improperly excluded certain evi-
dence, we will proceed to analyze "[w]hether [the] limi-
tations on impeachment, including cross-examination,
[were] so severe as to violate [the defendant's rights
under] the confrontation clause of the sixth amendment
. . . ." *State* v. *Abernathy*, 72 Conn. App. 831, 837, 806
A.2d 1139, cert. denied, 262 Conn. 924, 814 A.2d 379
(2002). This "is a question of law [that is] reviewed de
novo." Id.

I

The defendant first claims that the trial court improp-
erly (1) precluded his attorney from cross-examining
the victim as to the victim's possible hope for or expec-
tation of favorable treatment from the state with respect
to the victim's pending criminal cases in exchange for
his testimony in the present case, and (2) excluded
from evidence, as inadmissible hearsay, a transcript
from a hearing in one of the victim's pending criminal
cases in which the victim's attorney indicated that she

had received favorable treatment or hoped for a favorable disposition in that case. We disagree.

The following additional facts and procedural history are relevant to the disposition of these claims. Before the start of trial, the senior assistant state's attorney (state's attorney) informed the court that the victim had a criminal history including past convictions and pending charges. With respect to the pending charges, the victim had one pending misdemeanor disorderly conduct charge in one case and multiple, pending felony narcotics charges in two other separate cases. The trial court ruled that impeachment regarding the pending misdemeanor disorderly conduct charge was not permissible and limited impeachment to the pending felony narcotics charges. The defendant's attorney did not object to that limitation.

Franklin's attorney[9] then informed the court that "[t]here's a suggestion in [a] transcript [from one of the victim's pending felony cases] that [the victim] may receive some consideration pending his testimony [in the present case]" and asked whether he would be permitted to ask the victim whether he was the subject of pending felony charges and whether he "hopes that, if he's good here, he'll be cut loose in another bond." The defendant's attorney joined in the request of Franklin's attorney and stated that he had a transcript indicating that the state had offered the victim favorable treatment.

The trial court then asked the defendant's attorney whether he had information about the alleged specific agreement referred to in the transcript. The defendant's attorney responded that he had a good faith basis to question the victim about it because, in the transcript, the victim's attorney "mentioned in open court regard-

---

[9] As we noted previously, Franklin and the defendant were codefendants, and they were tried together.

ing getting even more favorable treatment." The state's attorney then challenged the representation of the defendant's attorney that he had a good faith basis to believe that an agreement existed between the victim and the state on the ground that the victim's attorney previously had informed the defendant's attorney that the victim would not be receiving any favorable treatment, and any statement indicating otherwise was merely her "wishful thinking" and not the result of any agreement with or promise from the state. In addition, the state's attorney previously had informed the court and the defendant, at a pretrial hearing in the present case, that no promises were made to the victim directly or indirectly through the victim's attorney.

Franklin's attorney then clarified that it did not matter to him "whether the state ha[d], in fact, made [an] agreement . . . ." In his view, the issue was "whether [the victim] thinks he's going to get something, based on what comes out [in his testimony in the present case]." The defendant's attorney agreed with this statement but then continued to assert that the transcript reflected that the victim had an actual agreement with the state. The defendant's attorney further stated that, when he recently had spoken to the victim's attorney, she indicated that she did not believe that she had represented to the court that the victim had an agreement with the state and denied the existence of a transcript that reflected otherwise. Rather than attempt to resolve the dispute as to what the victim's attorney said to the defendant's attorney, the court concluded that it would permit defense counsel[10] to ask the victim whether anything, in fact, had been promised to him.

During direct examination, the victim admitted that he had two pending felony cases and testified that no

---

[10] We refer to the defendant's attorney and Franklin's attorney collectively as defense counsel.

promises, guarantees or deals had been given to him in exchange for his testimony in the present case. On cross-examination, the victim reiterated this testimony in response to questions posed by the defendant's attorney. The defendant's attorney then asked whether one of the victim's pending cases dated back to November, 2004. The state's attorney objected to this question. The court then asked the defendant's attorney to explain the relevance of the inquiry, to which he replied that the victim's cases have been pending for more than eighteen months, whereas the present case proceeded to trial in less than one year. The court sustained the objection, stating that the inquiry was not relevant inasmuch as the present case proceeded to trial within one year because the defendant had filed a motion for a speedy trial.

The defendant's attorney then had three transcripts from the victim's pending cases marked for identification as exhibits. One of these transcripts was the transcript that the defendant's attorney previously had referred to in discussing the matter before the start of the trial. That transcript quotes the victim's attorney as stating the following: "Your Honor, I'm going to ask for a January [2006] court date . . . . Prior to [the victim's] stay in the hospital this summer, I have these cases worked out for the possibility of a fine and his— the people who are related to—[the victim's] case is now pending in part A, so I'm waiting to see what's happening there in an effort to maybe even resolve this case even more favorably, if possible. So, I'm just going to ask for January [6, 2006], so he doesn't have to unnecessarily come here before I can offer information that would help dispose of these matters."

The state's attorney objected to the admission of the transcript on hearsay grounds. In response, Franklin's attorney stated that whether the statements in the transcript constitute hearsay "all depends [on] whether

they're offered for the truth of the matter asserted or the impact on the listener." Franklin's attorney added that the victim "may have heard things that communicated to him something that gave him [an] expectation . . . in which case that's not . . . hearsay." The court then sustained the objection. Thereafter, the defendant's attorney again sought to have the transcript admitted for the truth of the statements contained therein, that is, to demonstrate that the victim had received or had been offered favorable treatment in his pending cases in exchange for his testimony in the present case. Specifically, the defendant's attorney stated: "Your Honor, I'd like to be heard on it, because I have an offer there regarding [the victim] *being offered something* by—through his public defender, that is— that we discussed [before the start of trial] is something that we were allowed to ask him, about whether or not this *actually occurred*. I have a transcript of it, *about a favorable disposition* regarding possible fines when he has cases that involve five years of incarceration, minimum. That's important. The jury needs to know about that, why are his cases going on." (Emphasis added.)

The court responded that the victim already had been asked whether he had been offered any favorable treatment, and he said "no." The court then informed the defendant's attorney that, if he had evidence that promises have been made, he should produce it. The defendant's attorney replied, "I did," referring to the transcript as proof that a promise, in fact, had been offered. He further stated that "[i]t's pertinent to ask [the victim] if any favorable disposition was offered . . . ." The court again stated that "he was asked and answered 'no.' " The defendant's attorney then argued that, according to the transcript, a deal was offered through the victim's attorney. The court concluded that the statements of the victim's attorney were mere con-

jecture because the state did not convey any such deal, and the objection again was sustained.

During closing argument, the defendant's attorney referred to the fact that the victim had pending felony charges in arguing that the victim was unworthy of belief. Specifically, the defendant's attorney argued to the jury: "You know he's got pending cases. [The victim is] going to do whatever [the victim has to] do to help himself. That means lying, that means sending innocent people to prison. He doesn't care. He is antisocial." In addition, the trial court, in its charge to the jury, emphasized that the victim's pending charges could be used to assess his credibility.

On appeal, the defendant claims that the trial court improperly precluded his attorney from cross-examining the victim as to the victim's possible hope for or expectation of favorable treatment from the state in one of the victim's pending felony cases in exchange for his testimony in the present case. The defendant claims that "[a]ll questions in this area were restricted to whether a 'specific agreement' with the state existed." In addition, the defendant argues that the trial court improperly excluded from evidence, as inadmissible hearsay, the transcript from a hearing in one of the victim's pending felony cases. The defendant claims that the trial court's exclusion of the transcript was improper because the transcript was not offered for the truth of the statements contained therein but, rather, to show their effect on the listener, namely, the victim.

The state responds that the trial court properly excluded the transcript as inadmissible hearsay because the defendant's attorney offered it only for the truth of the matter asserted, that is, to demonstrate that the victim had received or had been offered favorable treatment. The state asserts that the defendant's contention that the transcript was offered to show its effect

on the listener is belied by the facts and is being raised for the first time on appeal.

First, although the defendant claims that all questions regarding the victim's hope for or expectation of favorable treatment in his pending cases "were restricted to whether a 'specific agreement' with the state existed," a review of the record reveals that the court never restricted the defendant's attorney's cross-examination of the victim in this manner. Rather, the only limitation that the court imposed was its exclusion, on hearsay grounds, of the transcript containing the statements made by the victim's attorney in one of the victim's pending cases. Thus, the defendant's attorney was permitted to, and did, cross-examine the victim about his pending felony cases generally, and used this information during closing argument to impugn the victim's credibility. In addition, the defendant's attorney was free to cross-examine the victim with respect to whether the victim was motivated by a desire for favorable treatment in his pending cases, *separate and apart* from the statements of the victim's attorney that were contained in the excluded transcript. See *State* v. *Camerone*, 8 Conn. App. 317, 323, 513 A.2d 718 (1986) ("[regardless of] whether . . . an actual agreement has been worked out, a witness may be cross-examined to show a belief or expectation of favorable treatment by the state"). The defendant's attorney simply never pursued this line of questioning separately from his quest to introduce the excluded transcript.

We next review the defendant's claim that the trial court improperly classified the transcript as hearsay and excluded it from evidence on that basis. We apply plenary review to this issue. See *State* v. *Saucier*, supra, 283 Conn. 218.

" 'Hearsay' means a statement, other than one made by the declarant while testifying at the proceeding,

offered in evidence to establish the truth of the matter asserted." Conn. Code Evid. § 8-1 (3). "Hearsay is generally inadmissible unless an exception in the Code of Evidence . . . [or] the General Statutes . . . applies. [Id.] § 8-2." *State* v. *Foster*, 293 Conn. 327, 334, 977 A.2d 199 (2009).

In the present case, the defendant's attorney repeatedly sought to introduce the excluded transcript as substantive proof that the victim had received or had been offered favorable treatment from the state in exchange for his testimony in the present case. Indeed, the defendant's attorney consistently argued that the transcript proved that the victim had been "offered something" because the victim's attorney stated therein that she had one of the victim's pending felony narcotics cases, in which each of the charges carried a minimum term of five years incarceration, worked out for "possible fines . . . ." When offered for this purpose, namely, the truth of the matter asserted by the victim's attorney, the statements in the transcript are unquestionably hearsay. Accordingly, the trial court properly excluded it from evidence on that basis.

Our conclusion is not altered by the fact that Franklin's attorney *suggested* to the trial court that, *in theory*, the statements in the transcript would not constitute hearsay if they were not offered for their truth but, rather, for their impact on the listener. Although the defendant's attorney stated that he joined in this theoretical suggestion, he never *actually* offered the transcript for this purpose.[11] To the contrary, all of the arguments advanced by the defendant's attorney centered on his contention that the transcript proved that the victim had, in fact, been offered favorable treatment. Moreover, if the defendant's attorney actually had

---

[11] Franklin's attorney made no attempt to offer the transcript into evidence for this purpose either.

attempted to offer the transcript for the purpose of demonstrating its impact on the victim upon hearing his attorney's statements, that is, as circumstantial evidence that the victim may have believed that he would benefit from favorable treatment in his pending cases in exchange for his testimony in the present case, one would expect that the defendant's attorney also would have questioned the victim directly regarding such a belief *and* his motivation to testify in the present case on the basis of that belief. His failure to pursue this line of questioning strengthens our conclusion that the defendant's attorney sought to admit the transcript only for the truth of the matter asserted therein. Therefore, the trial court properly classified the statements in the transcript as hearsay, and the exclusion of it on that basis did not violate the defendant's sixth amendment rights to confrontation and to present a defense. See, e.g., *State* v. *Winot*, supra, 294 Conn. 775–76 (defendant is bound by rules of evidence in presenting defense); *State* v. *Tutson*, supra, 278 Conn. 746–51 (no violation of constitutional right to present defense when trial court properly excluded evidence on hearsay grounds).

II

The defendant's second claim is that the trial court improperly precluded his attorney from cross-examining the victim about his relationship with Hunt, who was the victim's girlfriend at the time of the shootings, after the victim testified that one of the reasons that he did not immediately inform the police of the identities of his assailants in the May 30, 2005 shooting was that Hunt was "close to their family" and that the victim "didn't want to mess that up with her." We disagree.

The following additional facts and procedural history are relevant to this claim. On direct examination, the victim testified that, when the police arrived at the scene of the May 30, 2005 shooting, he refused to tell

them who had shot him because, among other things, he feared for his life at that time. On cross-examination, Franklin's attorney questioned the victim about his unwillingness to cooperate with the police and asked him whether it was true that he had told the police that he just wanted to go to his girlfriend's house and that he wanted them to leave him alone. The victim confirmed that this was true. The victim further admitted that he was not truthful with the police on that day when he told them that he did not know who had shot him. Franklin's attorney then asked the victim why he would leave his assailant at large if he knew that he had shot him. The victim replied that Hunt, the woman he was dating at that time, who also was the mother of his child, was "close to their family," and he "didn't want to mess that up with her." Hunt was the victim's girlfriend at the time of both shootings but not at the time of trial. Franklin's attorney then asked the victim if Hunt was the woman who was described in various parts of the victim's hospital records as the victim's fiancée or wife. The victim responded affirmatively but stated that it was Hunt who had made those representations to the hospital.

In response to further cross-examination by Franklin's attorney, the victim testified that, after the second shooting, he told the police who had shot him on both May 30 and July 3, 2005. At that point, the victim apparently no longer was worried about spoiling his relationship with Hunt. He also reaffirmed that one of the reasons he did not cooperate with the police on May 30, 2005, was his fear for his life.

On cross-examination by the defendant's attorney, the victim again testified that, on May 30, 2005, he did not want to speak to the police because he was "frustrated" and "agitated," and just wanted to see Hunt. The defendant's attorney asked the victim whether his frustration and agitation had anything to do with the

fact that he had fought with Hunt. The victim indicated that it did not, at which point the state's attorney objected. The court sustained the objection. The defendant's attorney then asked, "and you've been frustrated with . . . Hunt before . . . ?" The state's attorney again objected on the ground of relevance and claimed that the question probably violated the court's previous ruling excluding the admission of the victim's pending misdemeanor disorderly conduct charge, which involved Hunt. The court excused the jury, and the defendant's attorney attempted to explain the relevance of this line of inquiry.

The defendant's attorney argued that the inquiry was relevant because the victim previously had testified that one of the reasons that he did not cooperate with the police on May 30, 2005, was that he was in a relationship with Hunt, who was close to one of the assailants' families, and that he did not want to "mess that up with her." The defendant's attorney claimed that this line of inquiry was intended to challenge the victim's credibility with regard to his motive not to cooperate with the police. Specifically, the defendant's attorney argued that the victim had misrepresented his relationship with Hunt as being "close" because he previously had "beat[en] this person [up] . . . ." The defendant's attorney claimed, therefore, that the victim was being untruthful when he stated that his relationship with Hunt was one of the reasons why he did not cooperate with the police. The court sustained the objection on the ground that it was "irrelevant to the issue because [the victim] indicated [that] he didn't tell the police anything about who [had] shot him, which is pertinent."

On appeal, the defendant claims that the victim's refusal or inability to identify his assailants on May 30, 2005, was a relevant area of impeachment and cross-examination, and that the victim "[e]ither . . . had a good reason for not naming them . . . or he . . . just

lied to the police." (Citation omitted.) The defendant claims that the victim's relationship with Hunt was "not a good or viable reason" for delaying his identification of his assailants because his description of that relationship was false. Specifically, the defendant claims that the victim previously had assaulted Hunt, and, therefore, his relationship with her could not have been close. Thus, "[h]is reason for not cooperating [with the police] was 'absolutely false.' " The defendant argues that his attorney should have been permitted to explore the victim's relationship with Hunt because it was directly relevant to the victim's testimony about his reasons for lying to the police, showed inconsistencies in his testimony and exposed his tendency to fabricate when it suited his purpose. Accordingly, the defendant claims that the trial court's determination that this line of questioning was irrelevant and its preclusion of it on that basis were improper.

The state responds that the trial court properly precluded that line of questioning as irrelevant because the defendant's attorney's proffered foundation for the inquiry was based on sheer speculation and failed to establish a viable connection between the victim's fight with Hunt and the pertinent issues in the case, namely, whether the victim correctly identified the defendant and Franklin as his assailants and whether the victim was truthful when he testified that his relationship with Hunt was one of the reasons why he did not cooperate with the police on May 30, 2005. The state further argues that the effort of the defendant's attorney to cross-examine the victim about his fight with Hunt was merely a veiled attempt to impeach the victim impermissibly with alleged acts of general bad character and to elicit details of a pending disorderly conduct charge that the trial court previously had determined was not a proper ground for impeachment.

We conclude that the trial court did not abuse its discretion in ruling that the defendant's attorney's inquiry was irrelevant and precluding it on that basis. "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Internal quotation marks omitted.) *State* v. *Coleman*, 241 Conn. 784, 788–89, 699 A.2d 91 (1997). "The trial court has wide discretion to determine the relevancy of evidence" and "[e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Sullivan*, 244 Conn. 640, 653, 712 A.2d 919 (1998). "The proffering party bears the burden of establishing the relevance of the offered testimony. Unless such a proper foundation is established, the evidence . . . is irrelevant." (Internal quotation marks omitted.) *State* v. *Pratt*, 235 Conn. 595, 605, 669 A.2d 562 (1995).

In the present case, the defendant's claim lacks a proper foundation and is belied by the evidence. The defendant claims that, because the victim previously had assaulted Hunt, it necessarily follows that his relationship with her could not have been close. On the basis of this assumption, the defendant concludes that the victim's reason for not cooperating with the police

must have been false. The defendant's claim suffers from two fatal flaws.

First, we agree with the state that the defendant's foundation is wholly speculative. Simply because the victim and Hunt allegedly had been in a fight does not necessarily mean that their relationship was not close and that his reason for not cooperating with the police on May 30, 2005, was false. Indeed, much of the cross-examination of the victim by defense counsel revealed that, as of May 30, 2005, the victim had what appeared to be a very close relationship with Hunt. Specifically, in response to questioning by Franklin's attorney, the victim confirmed that he had told the police that he just wanted to go to his girlfriend's house after the shooting and to have her take him to the hospital. Subsequently, defense counsel questioned the victim about notations in his hospital records that referred to Hunt as his fiancée or his wife. It simply strains credulity that the victim would have made or acquiesced in these contemporaneous statements with the forethought that, one year later, at the defendant's trial, the victim would use them as the basis for a lie during his cross-examination.

Second, the defendant's foundation is insufficient because defense counsel never represented to the court *when* the victim allegedly assaulted Hunt. If the assault occurred after May 30, 2005, then it could not have had any bearing on the closeness of the victim's relationship with Hunt or his decision not to cooperate with the police on that date. In sum, defense counsel failed to demonstrate any open and visible connection between the alleged fight with Hunt and the victim's decision not to tell the police the identities of his assailants on May 30, 2005. Accordingly, the trial court did not abuse its discretion in ruling that the inquiry of the defendant's attorney was irrelevant, and the court's decision to preclude it on that basis did not violate the defendant's

sixth amendment rights to confrontation and to present a defense. See, e.g., *State* v. *King*, 249 Conn. 645, 668, 735 A.2d 267 (1999) ("[i]f the proffered evidence is not relevant, the defendant's right to confrontation is not affected, and the evidence was properly excluded" [internal quotation marks omitted]).

### III

The defendant's third claim is that the trial court improperly precluded his attorney from impeaching the victim with the facts underlying his conviction of possession of a weapon in a motor vehicle and with the name of that offense after the victim testified that he did not carry a gun on May 30, 2005, or "on other days . . . ." We disagree.

The following additional facts and procedural history are relevant to this claim. Before the start of trial, the state's attorney informed the court that the victim had a previous felony conviction of possession of a weapon in a motor vehicle. The state's attorney argued that, because this felony did not relate to the victim's truth and veracity, defense counsel should not be permitted to question the victim about the name of the felony. The court agreed and ruled that this crime could be referred to only as an unnamed felony. The defendant's attorney did not object to this ruling.

On direct examination, the state's attorney asked the victim if he previously had been convicted of a felony, to which the victim responded, "[y]es." On cross-examination by Franklin's attorney, the victim agreed that selling drugs is sometimes a "violent enterprise" but denied having carried a gun on May 30, 2005. Franklin's attorney then asked: "You [have] carried guns on other days, haven't you?" The state's attorney immediately objected to this question on the ground of relevance. Before the court could rule on the objection, the victim replied, "[n]o." Franklin's attorney then asked the vic-

tim the name of the felony of which he had been convicted. The state's attorney objected again, and the court sustained the objection, ruling that this line of inquiry was irrelevant. The defendant's attorney then interjected and argued that the victim had "opened the door" to this question by testifying that he never had carried a gun. In response, the court reiterated that the objection had been sustained.

On appeal, the defendant claims that the victim opened the door to cross-examination about carrying a gun when he (1) admitted that he was engaged in drug selling when the May 30, 2005 incident occurred, (2) admitted that selling drugs was a "violent enterprise," and (3) testified that he did not carry a gun on May 30, 2005, or on any other day. The defendant claims that the last statement was contradicted by the victim's conviction for possession of a weapon in a motor vehicle and, therefore, was proper fodder for impeachment. See State v. Denby, 198 Conn. 23, 31–33, 501 A.2d 1206 (1985), cert. denied, 475 U.S. 1097, 106 S. Ct. 1497, 89 L. Ed. 2d 898 (1986).

We conclude that the trial court did not abuse its discretion in ruling that the inquiry was irrelevant and precluding it on that basis. At the outset, we note that the defendant's first and second bases for his claim that the victim had opened the door to this line of inquiry were not raised at trial and otherwise lack merit. The only conceivable relevance of Franklin's attorney's question regarding the name of the victim's felony was to contradict the victim's testimony that he did not carry guns on any other day. This is not a case in which the defendant has raised a claim of self-defense, accident, or other claim that would make the victim's possession of a gun on the day of the shooting or any other day "relevant to the central factual issue presented by the evidence." Id., 31. The defendant's sole theory of the case is that the victim mistakenly identified the

defendant as one of his assailants. Therefore, the defendant's argument that the victim opened the door to the question posed by Franklin's attorney when the victim admitted (1) that he was engaged in drug selling when the May 30, 2005 incident occurred, and (2) that selling drugs was a "violent enterprise," is unavailing.

We further conclude that the defendant's third basis for his claim fails because defense counsel did not lay a proper foundation to demonstrate that the victim's testimony was, in fact, contradicted by his prior conviction of possession of a weapon in a motor vehicle. "A witness may be impeached by the introduction of contradictory evidence . . . *as long as the evidence is in fact contradictory* . . . ." (Emphasis added.) *State* v. *Jose G.*, 290 Conn. 331, 344, 963 A.2d 42 (2009). In the present case, the victim testified that he had not *carried guns* "on other days . . . ." This statement is not necessarily contradicted by the fact that he was convicted of *possession* of a *weapon* in a motor vehicle under General Statutes § 29-38 because § 29-38 punishes both the unlawful possession of firearms and "weapons." General Statutes § 29-38 (a) defines the term "weapon" as follows: "[A]ny BB. gun, any blackjack, any metal or brass knuckles, any police baton or nightstick, any dirk knife or switch knife, any knife having an automatic spring release device by which a blade is released from the handle, having a blade of over one and one-half inches in length, any stiletto, any knife the edged portion of the blade of which is four inches or over in length, any martial arts weapon or electronic defense weapon, as defined in section 53a-3, or any other dangerous or deadly weapon or instrument." Defense counsel failed to make an offer of proof specifying the type of weapon that the victim was convicted of possessing under § 29-38. In addition, even if the victim was convicted of possessing a gun in a motor vehicle, "possession" does not necessarily mean "car-

rying." To be convicted under § 29-38, a person need only "knowingly ha[ve], in any vehicle owned, operated or occupied by such person, any weapon . . . ." General Statutes § 29-38 (a). Thus, defense counsel failed to make an offer of proof specifying that the victim's conviction under § 29-38 involved the "carrying" of a gun on his person, rather than, for example, knowing that one was in the trunk of his car. Accordingly, defense counsel failed to establish a proper foundation that the evidence was, in fact, contradictory, and, therefore, we conclude that the trial court properly characterized it as irrelevant and precluded it on that basis. See *State* v. *Hines*, 163 Conn. 617, 619, 316 A.2d 392 (1972) (because crime of policy playing under General Statutes [Cum. Sup. 1965] § 53-298 was broadly defined, "evidence of conviction for policy playing, without specification of the particular act constituting the offense, in no way contradicted the testimony of the defendant with respect to the taking of any bet [and, therefore] [i]t was error to admit the evidence"); cf. *State* v. *L'Heureux*, 166 Conn. 312, 323, 348 A.2d 578 (1974) ("[e]vidence of convictions for nonsupport during a previous marriage did not contradict the testimony that at the time of trial the defendant considered himself a family man" [internal quotation marks omitted]). See generally *State* v. *Pratt*, supra, 235 Conn. 605 ("[u]nless . . . a proper foundation is established, the evidence . . . is irrelevant" [internal quotation marks omitted]). Because the trial court did not abuse its discretion in ruling that the evidence was irrelevant, the defendant's sixth amendment rights to confrontation and to present a defense were not violated. See *State* v. *King*, supra, 249 Conn. 668.

## IV

The defendant's final claim is that the trial court improperly precluded his attorney from questioning the victim about his abusive and profane conduct before a

Superior Court judge in 2004 and about a profane tattoo that the victim allegedly had, which concerned his disdain for the police. We disagree.

The following additional facts and procedural history are relevant to this claim. During cross-examination of the victim by Franklin's attorney, the victim admitted that he had been in Superior Court in 2004 on a felony charge and remembered "getting into it" with a judge. Franklin's attorney asked the victim whether he had told the judge that his name was "Elliot Fucking Snider." The victim responded that he did not remember saying that. Franklin's attorney then continued to ask the same question two more times, at which point the state's attorney objected on the ground of relevance. The trial court sustained the objection, noting that the victim had stated that he did not recall making that statement.

On cross-examination by the defendant's attorney, the defendant's attorney again asked the victim if he had used the name "Elliot Fucking Snider" in court in 2004. The state's attorney objected on the ground of relevance. The defendant's attorney claimed that the inquiry was relevant insofar as it concerned the victim's "[a]bility to perceive and recall events." The court noted that the victim previously had responded to this question but overruled the state's attorney's objection. The victim then responded that he had had "an incident with a judge" but that he did not make that specific statement. The defendant's attorney then asked the victim whether the incident with the judge involved his telling the judge to "fuck off" twenty-seven times. The state's attorney again objected on the ground of relevance, and the trial court sustained the objection. The defendant's attorney argued that the inquiry was relevant to the victim's credibility and his ability to perceive and recall events, and asked that the transcript of the victim's 2004 Superior Court hearing be marked for

identification. The court again sustained the objection, noting that the transcript was from 2004, whereas the shootings at issue in the present case did not occur until 2005.[12]

Following the court's ruling, the defendant's attorney continued to question the victim about other inappropriate statements that the victim allegedly had made in court in 2004. The state's attorney objected to this line of questioning on the ground of relevance, and the court sustained the objection, informing the defendant's attorney: "[T]his was sustained before. Stop it." The court then directed the defendant's attorney to focus on the issues before the jury, that is, the alleged shootings in 2005, and not on what happened in 2004.

Later in his cross-examination, the defendant's attorney asked the victim whether he "like[d] the police." The state's attorney objected on the ground of relevance, and the court sustained the objection, stating, "whether he likes them or not is not relevant . . . ." The defendant's attorney then asked the victim why he had a tattoo with the words "fuck the police" on his arm. The state's attorney again objected on the ground of relevance. The defendant's attorney claimed that the question was relevant to the issue of the victim's lack of cooperation with the police "versus his excuse . . . ." The court noted that the victim had not cooperated with the police and then sustained the objection.

On appeal, the defendant claims that his attorney's inquiries were relevant on a number of bases. First, the defendant claims that exposing the victim's "changeable character in court proceedings" would have given the jury "an opportunity to be better informed" about

---

[12] We have reviewed the transcript in question, and, although the victim used some variation of the word "fuck" twenty-eight times, he did not tell the judge to "fuck off" even once. Thus, the defendant's attorney's inquiry was not only inflammatory and irrelevant, but it also had no factual basis.

the victim and "the sort of person" that he is. Second, the defendant argues that the victim's denial of having stated in court that his name was "Elliot Fucking Snider" was an inconsistency under § 6-10 of the Connecticut Code of Evidence and supported the defendant's claim that the victim had a "recollection problem." Third, the defendant claims that the victim's outburst in court was relevant to his defense that the victim had mental health issues, including " 'intermittent explosive disorder' " and "paranoia . . . ." Fourth, the defendant claims that the alleged tattoo on the victim's arm "was another insight into his credibility . . . [and] showed his explosive and paranoid personality . . . [and] a bias against the police . . . ." (Citations omitted.)

We conclude that the trial court did not abuse its discretion when it sustained the state's attorney's objections to the inquiries regarding the victim's alleged tattoo and conduct before a judge in 2004 because the evidence that the defendant sought to elicit is barred by the Connecticut Code of Evidence and our common law. Section 4-5 (a) of the Connecticut Code of Evidence provides: "Evidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character or criminal tendencies of that person." In the present case, the defendant contends that his attorney sought to elicit evidence of the victim's conduct before a Superior Court judge in 2004 for the purpose of exposing the victim's "changeable character in court proceedings" so that the jury could be "better informed" about "the sort of person" that the victim is. Clearly, the defendant's attorney sought to prove that the victim was a bad "sort of person . . . ." When evidence is offered for this purpose, it is expressly prohibited by § 4-5 (a) of the Connecticut Code of Evidence.

The defendant's claim that the trial court improperly precluded his attorney from impeaching the victim with

the transcript from the 2004 court hearing after the victim denied having stated at that hearing that his name was "Elliot Fucking Snider" also is without merit. "As a general rule, extrinsic evidence of a prior inconsistent statement[13] may not be admitted to impeach the testimony of a witness on a collateral matter. . . . Thus . . . a witness' answer regarding a collateral matter is conclusive and cannot be contradicted later by extrinsic evidence. . . . Extrinsic evidence of a prior inconsistent statement may be admitted, however, to impeach a witness' testimony on a *noncollateral* matter. . . . A matter is not collateral if it is relevant to a material issue in the case apart from its tendency to contradict the witness. . . . The determination of whether a matter is relevant to a material issue or is collateral generally rests within the sound discretion of the trial court." (Citations omitted; emphasis in original.) *State* v. *Valentine*, 240 Conn. 395, 403, 692 A.2d 727 (1997). In the present case, whether the victim told a judge in 2004 that his name was "Elliot Fucking Snider" is a collateral matter because it is not relevant to any material issue in this case. Specifically, it is not relevant to whether the victim properly identified the defendant as his assailant, and it does not show any possible motive, bias or interest of the victim. Accordingly, the trial court properly exercised its discretion when it excluded the 2004 transcript because it is extrinsic evidence of a collateral matter.

---

[13] Although the victim's testimony that he did not remember saying "Elliot Fucking Snider" was not directly inconsistent with his prior use of that name in court, a witness' claim that he doesn't remember making a particular statement may be deemed to be inconsistent with the witness' actual making of that statement. See *State* v. *Whelan*, 200 Conn. 743, 748–49 n.4, 513 A.2d 86 ("A statement's inconsistency . . . is not limited to cases in which diametrically opposed assertions have been made. . . . [I]nconsistencies may be found in changes in position and . . . in denial[s] of recollection."); see also *State* v. *Trotter*, 69 Conn. App. 1, 17–21, 793 A.2d 1172 (victim's testimony that he did not remember who had shot him was deemed to be inconsistent with victim's prior statement to police identifying defendant as person who shot him), cert. denied, 260 Conn. 932, 799 A.2d 297 (2002).

The defendant's final claim that the victim's alleged tattoo and outburst in court in 2004 were relevant to the victim's credibility and the defendant's defense that the victim had mental health issues also is unavailing. First, the victim's alleged tattoo and outburst in court are not probative of his character for untruthfulness. Accordingly, those inquiries were not permissible under § 6-6 of the Connecticut Code of Evidence,[14] which permits inquiries about specific instances of conduct that are probative of a witness' character for untruthfulness.

Second, we conclude that the trial court did not abuse its discretion in ruling that the evidence regarding the tattoo was inadmissible to establish that the victim had failed to cooperate with or had a bias against the police. As the trial court observed, the victim admitted that he did not cooperate with the police on May 30, 2005. Thus, his lack of cooperation was undisputed, and any additional evidence to establish that fact would have been cumulative. In addition, the defendant's attorney failed to lay a proper foundation for the tattoo evidence because there was no claim or evidence that the victim had the tattoo at the time of the shooting.

---

[14] Section 6-6 of the Connecticut Code of Evidence provides: "(a) Opinion and reputation evidence of character. The credibility of a witness may be impeached or supported by evidence of character for truthfulness or untruthfulness in the form of opinion or reputation. Evidence of truthful character is admissible only after the character of the witness for truthfulness has been impeached.

"(b) Specific instances of conduct.

"(1) General rule. A witness may be asked, in good faith, about specific instances of conduct of the witness, if probative of the witness' character for untruthfulness.

"(2) Extrinsic evidence. Specific instances of the conduct of a witness, for the purpose of impeaching the witness' credibility under subdivision (1), may not be proved by extrinsic evidence.

"(c) Inquiry of character witness. A witness who has testified about the character of another witness for truthfulness or untruthfulness may be asked on cross-examination, in good faith, about specific instances of conduct of the other witness if probative of the other witness' character for truthfulness or untruthfulness."

Finally, we conclude that the trial court did not abuse its discretion in excluding the evidence of the alleged tattoo and the victim's outburst in court because the defendant's attorney had failed to lay a proper foundation that the victim had a mental health condition at the time he received the tattoo and had his outburst in court. According to the evidence at trial, the victim was not diagnosed with paranoia until after the first shooting in 2005. Thus, the defendant's claim that this evidence supported his defense is based solely on conjecture. Because the trial court did not abuse its discretion in precluding the defendant's attorney from questioning the victim about these matters, the defendant's sixth amendment rights to confrontation and to present a defense were not violated. See, e.g., *State* v. *King*, supra, 249 Conn. 668.

The judgments are affirmed.

In this opinion the other justices concurred.