# STATE OF CONNECTICUT *v.* RICHARD ANNULLI
## (AC 32272)

Bishop, Robinson and Peters, Js.

Argued May 19—officially released August 9, 2011

*Mark G. Ouellette*, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, former state's attorney, and *Cynthia S. Serafini*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Richard Annulli, appeals from the judgment of conviction, rendered after a jury trial, of two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (B), one count of attempt to commit sexual assault in the fourth degree in violation of General Statutes §§ 53a-49 and 53a-73a (a) (1) (B), and three counts of risk of

injury to a child in violation of General Statutes § 53-21 (a).[1] On appeal, the defendant claims that (1) the trial court improperly excluded certain impeachment evidence in violation of § 6-6 (b) (1) of the Connecticut Code of Evidence, and his rights to confrontation and to present a defense under the sixth amendment to the United States constitution, and (2) the evidence was insufficient to support his conviction of one count of sexual assault in the fourth degree and one count of risk of injury to a child. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. One day in the fall of 2006, the victim, A, was visiting with her friend, K, at K's home in Oakville when the defendant, who was the victim's neighbor at the time, stopped his vehicle in front of K's home and requested that the victim come over to his vehicle.[2] The victim walked over to the passenger's side of the vehicle and leaned on the vehicle by the open window. While the victim was leaning on the vehicle, the defendant grabbed her arm, pulled her body halfway into the vehicle and attempted to kiss her. When the victim refused to kiss the defendant, he attempted to place her hand on his penis[3] and told her not to tell anyone about the incident. At this point, K, who had observed the entire incident, ran over to the vehicle and began to pull the victim free. When the victim finally pulled free of the

[1] Although §§ 53a-73a (a) and 53-21 have been amended since the date of the defendant's offenses; see Public Acts 2007, No. 07-143, §§ 2 and 4; the changes, including the redesignation of certain subsections, are not relevant to this appeal. For purposes of clarity, we refer herein to the current revision of the statutes.

[2] The record indicates that at the time of the incident, the victim was approximately thirteen years old and that the defendant was approximately forty-eight years old.

[3] According to the victim's testimony, the defendant was sitting in the driver's seat of his vehicle with his pants pulled down to his thighs and his penis exposed.

defendant, the victim and K ran into K's home and locked the door.

On another occasion, in the summer of 2007, the victim went to the defendant's house to summon her brother, B, home.[4] While the victim was waiting for B, she went into the defendant's garage and sat down. The defendant, who was working in the garage at the time, walked over to the victim and began touching her vagina through her clothing. As the defendant groped the victim, he told her, referring to her vagina, that "it was mine" and "not to let anybody else touch it." He also warned the victim not to disclose the abuse. Thereafter, the victim left and returned to her home.

Later during the summer of 2007, the victim again went over to the defendant's house. While the victim was in the defendant's kitchen, he tried to put his hand on the victim's vagina but she walked away. At some point after the victim initially had walked away from the defendant, he touched her vagina through her clothing. The victim then left the house.

On January 31, 2008, the victim telephoned the defendant's house from her school in an effort to contact the defendant's son. The defendant answered the telephone and informed the victim that his son was not at home. The victim explained that she needed a ride to her mother's workplace and the defendant offered to drive her. The victim accepted the defendant's offer and he picked her up from school. During the ride, the defendant placed his hands between the victim's crossed legs and tried pushing them apart. The victim moved away from the defendant, pressed herself against the passenger side door and pretended to be sending text messages from her cellular telephone. When they arrived at the workplace of the victim's mother, the defendant told the victim not to tell anyone about the incident.

---

[4] The record indicates that B and the defendant's son were friends.

The next day, on February 1, 2008, the victim disclosed the incidents of abuse to her mother and Detective Lisa Scannell of the Watertown police department. After conducting an investigation, the police obtained a warrant and arrested the defendant. The defendant was charged in a substitute information with two counts of sexual assault in the fourth degree,[5] one count of attempt to commit sexual assault in the fourth degree, three counts of risk of injury to a child[6] and one count of attempt to commit kidnapping in the second degree in violation of General Statutes §§ 53a-49 and 53a-94 (a).

On February 22, 2010, the evidentiary portion of the defendant's trial commenced. On February 24, 2010, the trial court granted the defendant's motion for a judgment of acquittal as to the charge of attempt to commit kidnapping in the second degree. On February 26, 2010, the jury returned guilty verdicts as to the remaining six charges. On May 7, 2010, the court sentenced the defendant to a total effective term of ten

---

[5] Counts one and three of the substitute information alleged sexual assault in the fourth degree. Count one charged that "on or about January 31, 2008," the defendant "intentionally subjected . . . [the victim] to sexual contact when [the victim] was fourteen years old and the defendant was more than three years older than her."

Count three charged that "on a date or dates between January 1, 2007 and December 31, 2007," the defendant "intentionally subjected . . . [the victim] to sexual contact when [the victim] was fourteen years old or younger, and the defendant was more than three years older than her."

[6] Counts two, four and seven of the substitute information alleged risk of injury to a child. Count two charged that "on or about January 31, 2008," the defendant "did an act likely to impair the morals of a child under the age of sixteen, to wit: he had sexual contact with the intimate parts of a child . . . in a sexual and indecent manner."

Count four charged that "on a date or dates between January 1, 2007 and December 31, 2007," the defendant "did an act likely to impair the morals of a child under the age of sixteen, to wit: he had sexual contact with the intimate parts of a child . . . in a sexual and indecent manner."

Count seven charged that "on a date or dates between January 1, 2006 and December 31, 2006," the defendant "did an act likely to impair the health or morals of a child under the age of sixteen . . . ."

years incarceration, execution suspended after five years, followed by fifteen years probation, which included a number of special conditions. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly excluded certain impeachment evidence in violation of § 6-6 (b) (1) of the Connecticut Code of Evidence, and his rights to confrontation and to present a defense under the sixth amendment to the United States constitution. Specifically, the defendant argues that the court abused its discretion when it precluded defense counsel from cross-examining the victim about an unrelated incident in which she allegedly lied to the police and altered evidence. We are not persuaded.

The following additional facts are relevant to the defendant's first claim. During cross-examination, defense counsel questioned the victim about her honesty and inquired as to whether she ever lied to her friends during Internet conversations. The state objected to this line of inquiry and requested a discussion outside the presence of the jury. The court excused the jury and heard arguments from both parties.

Outside the presence of the jury, defense counsel claimed that he had evidence that showed that the victim had "intentionally altered e-mail documents and [had] lied [to the police] in an attempt to have another person arrested for threatening her." In response, the state told the court that there was "some discrepancy" as to what had been said online and, consequently, the evidence was unclear as to whether the victim had lied. In response, defense counsel maintained that the victim had "intentionally chang[ed] the course of a conversation and then [lied] to the police . . . [about] what

[had] happened." Following the state's request, defense counsel made an offer of proof.[7]

After considering the offer of proof and additional arguments by the parties, the court determined that the evidence failed to establish that the victim had lied to the police, and, therefore, defense counsel could not make this inquiry. Even though this line of inquiry was not permitted, the court indicated that defense counsel could pursue other lines of questioning concerning the victim's credibility.

After the jury was returned to the courtroom, defense counsel resumed cross-examination of the victim, asking her if she was involved in an incident with a classmate involving the exchange of e-mail messages. The state objected on the ground that the question was beyond the scope of direct examination. Defense counsel argued that he was "establishing a basis . . . as to credibility regarding [the victim] and her dealings with another witness." After speaking with counsel off the record, the court again excused the jury.

Outside the presence of the jury, the court permitted defense counsel to make an offer of proof by questioning the victim. After the victim admitted to being involved in an incident with a classmate involving the exchange of e-mail messages, defense counsel asked the victim repeatedly if she had changed or altered the e-mails that she had provided to the police in connection

---

[7] In his offer of proof, the defendant's trial counsel stated that he had evidence that, in a prior unrelated matter, the victim was involved in an exchange of e-mail messages with a classmate, and that the victim had complained to the police that she had received a threatening message from the classmate. Defense counsel further stated that, in response to an investigation by the police, the victim and the classmate provided the police with copies of the e-mail messages. According to the defendant's trial counsel, during the course of the investigation, "the [victim] . . . did, in fact, alter the e-mail and it was determined that [the complaint filed by the victim] was a lie."

with the incident. In response, the victim stated that she had copied and pasted the e-mails into a Word document and provided this information to the police. She further testified that the police were aware that the information that she had provided to them had been copied and pasted from the original, and that she had not been arrested for changing the e-mails or filing a false statement to the police. At the conclusion of defense counsel's questioning, however, the following exchange occurred:

"[Defense Counsel]: When you . . . were at the police station, the bottom line and end result was that it was determined that the e-mail you claimed you received you had changed, correct?

"[The Victim]: Yes.

"[Defense Counsel]: So you lied to the police because you told them you had been threatened and it really wasn't true, correct?

"[The Victim]: Yes."

On cross-examination, the state inquired as to what the victim had meant when she stated on direct examination that she had copied and pasted the e-mails. The victim responded that she had "highlighted [the e-mails] from MySpace and . . . copied [them] and went to Word Pad and pasted [them]." Upon further examination, the victim admitted that she had deleted some of the information contained in the original e-mails, but maintained that she had not altered the e-mails in such a manner as to contain a threat that was not in the original. At the conclusion of the state's cross-examination, the following exchange occurred:

"[The Prosecutor]: And so as you sit here today, did you lie to the police about the threat that you got from [a classmate]?

"[The Victim]: No.

"[The Prosecutor]: Was it a lie [that a classmate] had threatened you?

"[The Victim]: No."

At the conclusion of the testimony, the court ruled: "Any line of questioning concerning whatever this incident may or may not have been between [the victim] and [the classmate] is collateral and that line of questioning is not allowed."

We begin our analysis by setting forth the legal principles and standard of review that guide our resolution of the defendant's claim. "The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . . Indeed, if testimony of a witness is to remain in the case as a basis for conviction, the defendant must be afforded a reasonable opportunity to reveal any infirmities that cast doubt on the reliability of that testimony. . . . The defendant's right to cross-examine a witness, however, is not absolute. . . . [T]he [c]onfrontation [c]lause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. . . . Thus, [t]he confrontation clause does not . . . suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination." (Citations omitted; internal quotation marks omitted.) *State* v. *Mark R.*, 300 Conn. 590, 608–609, 17 A.3d 1 (2011).

In analyzing the defendant's claim, then, "we first review the trial court's evidentiary [ruling]. Our standard of review for evidentiary claims is well settled. To the extent [that] a trial court's admission [or exclusion]

of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. . . . We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law, however, for an abuse of discretion. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court . . . reasonably [could have] conclude[d] as it did. . . . If, after reviewing the trial court's evidentiary rulings, we conclude that the trial court properly excluded the proffered evidence, then the defendant's constitutional claims necessarily fail. . . . If, however, we conclude that the trial court improperly excluded certain evidence, we will proceed to analyze [w]hether [the] limitations on impeachment, including cross-examination, [were] so severe as to violate [the defendant's rights under] the confrontation clause of the sixth amendment . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Davis*, 298 Conn. 1, 10–11, 1 A.3d 76 (2010).

In the present case, the defendant claims that the proffered evidence establishes that the victim admitted that she had lied to the police about being threatened by a classmate and that she had made substantive alterations to the e-mail messages containing the threat prior to bringing them to the police. According to the defendant, this evidence establishes that the victim was untruthful, and, consequently, defense counsel should have been permitted, pursuant to § 6-6 (b) of the Connecticut Code of Evidence, to cross-examine the victim regarding these instances of untruthfulness and the court's failure to permit this line of inquiry, therefore, constituted an abuse of discretion. We disagree.

Section 6-6 (b) (1) of the Connecticut Code of Evidence provides in relevant part: "A witness may be asked, in good faith, about specific instances of conduct of the witness, if probative of the witness' character

for untruthfulness." Pursuant to this rule of evidence, "[a] witness may be impeached by specific acts of conduct that evidence a lack of veracity." *State* v. *Crumble*, 24 Conn. App. 57, 67, 585 A.2d 1245, cert. denied, 218 Conn. 902, 588 A.2d 1077 (1991); see *Hicks* v. *State*, 287 Conn. 421, 451, 948 A.2d 982 (2008). While a witness may be impeached by such acts, "[b]oth the allowance and the extent of cross-examination into the [prior acts] of a witness is discretionary with the trial court . . . and such evidence may be excluded . . . if it has a tendency to confuse or impede the litigation by *injecting collateral issues into the trial.*" (Citation omitted; emphasis added.) *State* v. *Crumble*, supra, 67–68; see also *State* v. *James*, 211 Conn. 555, 571–72, 560 A.2d 426 (1989) (court may exclude evidence if it has "tendency to inject a collateral issue into the trial"); *Robinson* v. *Atterbury*, 135 Conn. 517, 521, 66 A.2d 593 (1949) ("the trial court has a reasonable discretion as to the extent to which . . . cross-examination [concerning a witness's lack of veracity] will be permitted, particularly when the result might be to raise collateral issues").

In the present case, our review of the proffered evidence reveals that the victim provided inconsistent testimony regarding whether she had lied to the police and whether she had made substantive alterations to the e-mail messages that she provided to the police. In particular, during her direct examination by defense counsel, the victim testified that she had lied to the police about being threatened by a classmate and that she had altered the e-mail messages that she had provided to them. Upon cross-examination by the state's attorney, however, the victim testified that she had not lied to the police about being threatened by her classmate and that she had not altered the e-mail messages in a manner that changed the nature of what had been stated in the original e-mails. Therefore, contrary to the

defendant's claim, the proffered evidence was unclear regarding whether the victim had lied to the police and whether she had substantively altered the e-mail messages containing the threat. As the proffered evidence was unclear, the court reasonably could have concluded that introduction of the proffered evidence would have injected collateral issues into the trial by requiring the jury to determine whether the victim in an unrelated incident had lied to the police and made substantive alterations to the e-mail messages.

Having concluded that the trial court reasonably could have concluded that the evidence would have injected collateral issues into the trial, we cannot conclude that the trial court abused its discretion when it precluded defense counsel from introducing this evidence by cross-examining the victim about whether she had lied to the police and altered evidence. Consequently, because the court did not abuse its discretion on the evidentiary issue, the defendant's constitutional claims necessarily fail. See *State* v. *Davis*, supra, 298 Conn. 11.

## II

The defendant next claims that the evidence was insufficient to support his conviction of one count of sexual assault in the fourth degree and one count of risk of injury to a child, as charged in counts three and four of the substitute information, respectively. Count three alleged that the defendant committed sexual assault in the fourth degree "on a date or dates between January 1, 2007 and December 31, 2007 . . . ." Count four alleged that the defendant committed risk of injury to a child "on a date or dates between January 1, 2007 and December 31, 2007 . . . ." We are not persuaded that the evidence was insufficient.

We begin by setting forth the applicable standard of review. "In reviewing a sufficiency of the evidence

claim, we utilize a two part analysis. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Sherman*, 127 Conn. App. 377, 382, 13 A.3d 1138 (2011). "This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Reynolds*, 118 Conn. App. 278, 309, 983 A.2d 874 (2009), cert. denied, 294 Conn. 933, 987 A.2d 1029 (2010).

A

We first consider whether the evidence was sufficient to support the defendant's conviction of sexual assault in the fourth degree, as charged in count three of the substitute information.

Section 53a-73a (a) (1) (B) provides in relevant part that a person is guilty of sexual assault in the fourth degree when "[s]uch person intentionally subjects another person to sexual contact who is . . . thirteen years of age or older but under fifteen years of age and the actor is more than three years older than such other person . . . ." General Statutes § 53a-65 (3) defines " '[s]exual contact' " as "any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person . . . ."

Section 53a-65 (8) defines " '[i]ntimate parts' " as "the genital area or any substance emitted therefrom, groin, anus or any substance emitted therefrom, inner thighs, buttocks or breasts." Therefore, "the state was required to present sufficient evidence to prove beyond a reasonable doubt that the defendant had contact with [the victim's] genital area for the purpose of sexual gratification . . . ." *State* v. *Michael H.*, 291 Conn. 754, 760, 970 A.2d 113 (2009).

At trial, the victim testified that the defendant had touched her vagina on two different occasions during the summer of 2007. One incident occurred while the victim was in the defendant's garage waiting for her brother. According to the victim's testimony, while she was seated in the garage, the defendant walked over to where she was seated, touched her vagina through her clothing and, while doing so, told her that "it was mine" and "not to let anybody else touch it." The other incident occurred when the victim was in the defendant's kitchen. The victim testified that the defendant attempted to touch her vagina but she walked away. According to the victim, after she walked away, the defendant was able to touch her vagina through her clothing.

In support of his insufficiency claim, the defendant argues that, notwithstanding the victim's testimony that the defendant did touch her vagina, the jury could not reasonably have inferred that he had contact with the victim's genital area in his kitchen because the victim testified that she had walked away from him when he attempted to touch her and, therefore, it was physically impossible for him to have touched the victim. The defendant's argument, however, ignores that the victim testified to more than one incident of sexual contact involving the defendant during the summer of 2007. As stated previously, in addition to the incident in the defendant's kitchen, the victim also testified that the

defendant touched her vagina in his garage. As count three of the substitute information charged that the defendant had sexual contact with the victim on "a date or dates between January 1, 2007 and December 31, 2007," the state only needed to establish that one incident of sexual contact occurred during this time frame to support the charge.

Construed in the light most favorable to sustaining the verdict, the jury reasonably could have concluded that the defendant had contact with the victim's genital area for the purpose of sexual gratification in the summer of 2007 based solely on the victim's testimony concerning the defendant's conduct in his garage.[8] Therefore, we conclude that the evidence was sufficient to support the defendant's conviction of sexual assault in the fourth degree as alleged in count three of the substitute information, and, accordingly, we reject the defendant's first claim of insufficient evidence.

B

We next consider whether the evidence was sufficient to support the defendant's conviction of risk of injury to a child, as charged in count four of the substitute information.

Section 53-21 (a) (2) provides in relevant part that a person is guilty of risk of injury to a child when such person "has contact with the intimate parts . . . of a child under the age of sixteen years . . . in a sexual and indecent manner likely to impair the health or morals of such child . . . ." As stated previously, § 53a-65 (8) defines " '[i]ntimate parts' " as "the genital area or

---

[8] As the defendant concedes, in "determining whether sexual contact occurred, it is of no consequence in our analysis that the contact occurred through the victim's clothing rather than against her bare skin." *State* v. *Alberto M.*, 120 Conn. App. 104, 111, 991 A.2d 578 (2010); see also *In re Mark R.*, 59 Conn. App. 538, 542, 757 A.2d 636 (2000) ("[t]o have 'sexual contact' as defined by the statute it is irrelevant whether the [defendant's] contact with the victim was through clothing or with bare skin").

any substance emitted therefrom, groin, anus or any substance emitted therefrom, inner thighs, buttocks or breasts." Therefore, the state was required to present sufficient evidence to prove beyond a reasonable doubt that the defendant had contact with the victim's genital area in a sexual and indecent manner that was likely to impair her health or morals.

As in part II A of this opinion, the defendant contends that the jury could not reasonably have concluded that he had contact with the victim's genital area in a sexual and indecent manner in his kitchen because the victim testified that she had walked away from him and, therefore, it was physically impossible for him to have touched the victim. Again, the defendant's argument ignores that the victim testified that the defendant touched her vagina on two different occasions in the summer of 2007; once in his garage and once in his kitchen. As count four of the substitute information charged that the defendant had contact with the intimate parts of the victim "on a date or dates between January 1, 2007 and December 31, 2007," the state only needed to establish one incident of contact with the intimate parts of the victim to support this charge.

After reviewing the evidence, we conclude that the jury reasonably could have concluded that the defendant had contact with the victim's genital area in a sexual and indecent manner that was likely to impair the health or morals of the victim in the summer of 2007 based solely on the victim's testimony concerning the defendant's conduct in his garage. We conclude, therefore, that the evidence was sufficient to support the defendant's conviction of risk of injury to a child as alleged in count four of the substitute information. Accordingly, we reject the defendant's second claim of insufficient evidence.

The judgment is affirmed.

In this opinion the other judges concurred.