******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MAURICE BEVERLEY
(AC 38432)

Lavine, Sheldon and Mullins, Js.

*Argued September 23—officially released December 13, 2016*

(Appeal from Superior Court, judicial district of New Haven, Vitale, J.)

*Laila M. G. Haswell*, senior assistant public defender, with whom, on the brief, was *Lauren Weisfeld*, chief

of legal services, for the appellant (defendant).

*Nancy L. Walker*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, former state's attorney, and *Stacey Haupt Miranda*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Maurice Beverley, appeals from the judgment of conviction, rendered after a jury trial, of one count of felony murder in violation of General Statutes § 53a-54c; one count of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2); and one count of criminal possession of a firearm in violation of General Statutes § 53a-217 (a). On appeal, the defendant claims that the trial court abused its discretion in (1) failing to conduct an adequate investigation into alleged juror bias, and (2) limiting the defendant's cross-examination of the state's key witness. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On March 31, 2010, the defendant told Eric Brooks, a codefendant, that he wanted to rob "somebody with money." On the night of April 2, 2010, the defendant and Eric Brooks met with Mary Pearson, their cousin, on the front porch of her aunt's home. Pearson was staying with her aunt, Mary Brooks, on the third floor of a three-story house, but another family lived on the first floor. The porch, which was in front of the first floor, was a small "community porch" where people from around the neighborhood gathered. On that night, there were "other"[1] people on the porch with the defendant, Eric Brooks, and Pearson. When Pearson went to meet the defendant, he was already on the porch and had the victim, Kenneth Bagley, who was a known drug dealer, on his cell phone. In front of the "other" people, the defendant asked Pearson if she would talk to Bagley to buy drugs for him. An hour later, Bagley arrived in his car and parked a couple of houses down from her aunt's house, in full view of the people on the porch. As Pearson and Bagley began to engage in a drug transaction in Bagley's car, the defendant opened the front driver's door, grabbed Bagley by the neck, and put a gun to his head. As a struggle ensued, the defendant shot Bagley in the upper body, which later caused his death. After the defendant shot Bagley, the defendant and Eric Brooks took Bagley's drugs and jewelry.

The defendant was charged with felony murder, robbery in the first degree, and criminal possession of a firearm. At trial, Pearson testified that she was unfamiliar with the family that lived on the first floor and with the "other" people on the front porch the night of the murder. During an extensive cross-examination about the tenants who lived on the first floor and about the "other" people, defense counsel asked whether Pearson knew of "*any disputes between the people on the first floor and* [*her*] *aunt*." The state objected to the question on the ground of relevancy. After arguments before the court, the court sustained the objection "based on numerous claims."

On November 20, 2013, the jury found the defendant guilty on all counts. The defendant was sentenced to a total effective sentence of seventy-five years imprisonment. This appeal followed. Additional facts will be set forth as needed.

I

First, the defendant claims that the trial court abused its discretion in failing to conduct an adequate investigation into alleged juror bias, which violated his right to an impartial jury guaranteed by the sixth and fourteenth amendments to the United States constitution. The defendant asserts that his claim is preserved, but if this court determines that it is not preserved, it is nevertheless reviewable either pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or under the plain error doctrine. The state argues that the defendant's claim is not reviewable because he waived his right to raise the claim on appeal. We agree with the state.

The following additional facts are relevant to this claim. The jury began its deliberations on November 18, 2013. On November 20, 2013, the trial court was notified that juror R.A.'s wife[2] received a phone call the night before and that when R.A. took the phone from her, the caller asked R.A. about the case. R.A. reported the call to the court, telling the court that the caller told him that "they" understood that R.A. was a juror on this case and that they needed information regarding the case. R.A. told the caller that he was prohibited from talking about the case, and he hung up the phone.[3] R.A. also told the court that he asked some of the other jurors earlier that morning whether any of them had received phone calls about the case. The court asked R.A. whether the phone call would prevent him from being a fair and impartial juror, and R.A. responded that it would not affect him. The court then gave both the state and the defense the opportunity to question R.A., but defense counsel declined to ask R.A. any questions. Defense counsel did not ask the court to dismiss R.A. as a juror, and the court did not dismiss R.A.

After questioning R.A., the trial court, sua sponte, proposed that it conduct an individualized voir dire of the remaining eleven jurors. Defense counsel did not object to the procedure or suggest that any other action be taken. During the voir dire, one juror stated that she had heard that some "people were nervous about [the call]." All of the jurors, however, told the court that the phone call did not affect their ability to be fair and impartial. At the end of each voir dire, the trial court gave both the state and the defense the opportunity to question the juror. Defense counsel declined to question any of the jurors.

After the court interviewed the last juror, it gave the state and the defense the opportunity to be heard on

the record.[4] Defense counsel stated that he was "concerned" that some of the jurors were nervous, but he acknowledged that he was "not concerned" about any jury bias. Defense counsel then stated, "I don't know if there's any way that a very quick investigation could be done and that's just the only thought I had." When asked by the trial court, however, who should conduct the investigation, defense counsel admitted that he did not know. Defense counsel then stated that the jury should proceed with its deliberations.

The court concluded that it was satisfied with the jurors' answers that each of them could be fair and impartial and that there was no indication that anything that had happened had "endanger[ed] the fairness of the proceedings . . . ." The court also stated that it had "inquired appropriately under the law" and that it did not think that "there's any further action required of the [c]ourt and counsel is not asking for any further action." Defense counsel did not voice any disagreement with this assessment.

On appeal, the defendant argues that the court abused its discretion when it declined "to ascertain how much the jurors' feelings of nervousness or fear . . . impact[ed] their deliberations and verdict." Particularly with regard to the court's voir dire of R.A., the defendant argues that the court should have asked R.A. whether the phone call had "emotionally impacted him" instead of just asking him whether, in spite of the call, he could be a fair and impartial juror. The defendant also contends that defense counsel's "comments did not constitute a waiver of the jury misconduct issue." We do not agree.

We set forth the applicable standard of review. "[T]he right to a trial by jury guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors." (Internal quotation marks omitted.) *State* v. *Roman*, 320 Conn. 400, 408, 133 A.3d 441 (2016). "[W]e have adopted the definition of a valid waiver of a constitutional right as the intentional relinquishment or abandonment of a known right. . . . This strict standard precludes a court from presuming a waiver of the right to a trial by jury from a silent record. . . . In determining whether this strict standard has been met, a court must inquire into the totality of the circumstances of each case. . . . When such a claim is first raised on appeal, our focus is on compliance with these constitutional requirements rather than on observance of analogous procedural rules prescribed by statute or by the Practice Book." (Citations omitted; internal quotation marks omitted.) *State* v. *Ouellette*, 271 Conn. 740, 752, 859 A.2d 907 (2004).

"[A]lthough there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has— and must have—full authority to manage the conduct

of the trial. . . . As to many decisions pertaining to the conduct of the trial, the defendant is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney. . . . Thus, decisions by counsel are generally given effect as to what arguments to pursue . . . what evidentiary objections to raise . . . and what agreements to conclude regarding the admission of evidence . . . . Absent a demonstration of ineffectiveness, counsel's word on such matters is the last." (Internal quotation marks omitted.) *State* v. *Kitchens*, 299 Conn. 447, 467–68, 10 A.3d 942 (2011); see *State* v. *Hampton*, 293 Conn. 435, 449, 988 A.2d 167 (2009) ("[w]aiver may be effected by action of counsel" [internal quotation marks omitted]). "The mechanism by which a right may be waived . . . varies according to the right at stake. . . . When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal." (Internal quotation marks omitted.) *State* v. *Foster*, 293 Conn. 327, 337, 977 A.2d 199 (2009).

In the present case, we conclude that the defendant waived his claim, and, therefore, we decline to review it. A defendant's claim that the trial court did not conduct an adequate investigation into alleged jury bias is one which can be waived by the actions of counsel. See id., 337–39. The trial court gave defense counsel the opportunity to question R.A. about the phone call after it conducted its own voir dire, but defense counsel declined to do so. The court proposed to the parties that it conduct an individualized voir dire of each juror about whether any jury bias existed, and defense counsel did not object or request that any further action be taken. See id., 337 (defense counsel requested that trial court conduct general inquiry of jury after trial court dismissed juror for juror misconduct). After the individualized voir dire of each of the remaining eleven jurors, the court afforded defense counsel the opportunity to question the juror, but defense counsel again declined to ask any additional questions. Most importantly, defense counsel expressly acknowledged that he was "not too concerned about any of [the jurors] being affected [because] [t]hey all said [they] weren't" and that "the jurors have indicated that they can proceed and [he] [thought that] they should." Considering defense counsel's actions under the totality of the circumstances, we conclude that he consented to and expressed satisfaction with the issue. See *State* v. *Foster*, supra, 293 Conn. 338–39 (wherein counsel waived claim by consenting to and expressing satisfaction with issue); see also *State* v. *Hampton*, supra, 293 Conn. 449–50 (defense counsel assented to jury charge given by trial court when he failed to object to charge and stated more than once that he was satisfied with charge). Accordingly, we conclude that defense counsel

waived any claim that the trial court did not conduct an adequate hearing as to alleged jury bias.

Apart from the individualized voir dire of each juror, defense counsel waived any claim that the court should have conducted an "investigation"[5] of the call to R.A.'s home. After stating that he thought "a quick investigation could be done," defense counsel expressly acknowledged that "the jurors have indicated [that] they can proceed and I think they should." Thus, again, defense counsel consented to and expressed satisfaction with the issue. See *State* v. *Foster*, supra, 293 Conn. 337.

Because defense counsel waived any claim that the trial court failed to conduct an adequate investigation of alleged jury bias, we will not entertain the defendant's request to review his claim pursuant to *Golding*.[6] "[I]n the usual *Golding* situation, the defendant raises a claim on appeal [that], while not preserved at trial, at least was not waived at trial. . . . We generally do not review unpreserved, waived claims." (Citation omitted; internal quotation marks omitted.) Id. "Therefore, a defendant cannot prevail under *Golding* on a claim that he implicitly waived at trial." (Internal quotation marks omitted.) *State* v. *Fabricatore*, 281 Conn. 469, 479, 915 A.2d 872 (2007). "To reach a contrary conclusion would result in an ambush of the trial court by permitting the defendant to raise a claim on appeal that his or her counsel expressly had abandoned in the trial court." (Internal quotation marks omitted.) *State* v. *Foster*, supra, 337.

We conclude that the defendant waived his claim, and, therefore, we decline to review it.

## II

The defendant's second claim is that the trial court abused its discretion when it sustained the state's objection that the proposed question of whether Pearson knew of "*any disputes between the people on the first floor and [her] aunt*" was irrelevant. In response, the state argues that the court did not abuse its discretion in sustaining the objection because defense counsel failed to show that the testimony he sought to elicit was relevant to demonstrating Pearson's motive to lie about who was responsible for the murder. We agree with the state.

The following additional facts are relevant to this claim. After the state objected to defense counsel's question on the ground of relevancy, the court excused the jury from the courtroom. Defense counsel argued before the court that the question of whether Pearson was aware of any disputes between Mary Brooks and the tenants on the first floor was relevant because it went to Pearson's state of mind, in that it tended to show that she was "falsely implicating [the defendant] because she [was] afraid of the other people who [lived]

on the first floor." The state argued that because Pearson testified that she knew neither the people who lived on the first floor nor the "other" people who were on the porch the night of the murder, there was no evidence in the record to suggest that she would be afraid of anyone present that night or of anyone living on the first floor, rendering the question irrelevant. The court sustained the objection "based on numerous claims." The court noted, however, that it was not foreclosing defense counsel from "developing motive, interest, or bias."

The defendant argues on appeal that the court abused its discretion in determining that the question was irrelevant. The defendant contends that the question of whether Pearson was aware of any disputes between Mary Brooks and the first floor tenants was relevant because it tended to show that Pearson was afraid of the first floor tenants. Her fear of the first floor tenants, the defendant argues, was relevant to the defendant's defense because it explained why Pearson continuously lied to the police throughout the investigation. He contends that it also tended to explain why Pearson may have lied on cross-examination about not knowing who the people on the front porch were or who the people who lived on the first floor were. The defendant argues that she may have lied for a number of reasons, including the possibility that one of the people on the porch that night or a tenant of the first floor may have given testimony that was inconsistent with hers or that she was afraid of those alleged to be the real perpetrators, namely, the first floor tenants. In short, the defendant argues that "[d]eveloping information as to Pearson's fears because of the alleged disputes was entirely relevant to her bias, prejudice, and interest in the outcome of the case." We do not agree.

"In analyzing the defendant's claim, we first review the trial court's evidentiary [ruling]. Our standard of review for evidentiary claims is well settled. . . . We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court . . . reasonably [could have] conclude[d] as it did. . . . If, after reviewing the trial court's evidentiary rulings, we conclude that the trial court properly excluded the proffered evidence, then the defendant's constitutional claims necessarily fail. . . . If, however, we conclude that the trial court improperly excluded certain evidence, we will proceed to analyze [w]hether [the] limitations on impeachment, including cross-examination, [were] so severe as to violate [the defendant's rights under] the confrontation clause of the sixth amendment . . . ."[7] (Internal quotation marks omitted.) *State* v. *Annulli*, 130 Conn. App. 571, 579–80, 23 A.3d 808 (2011), aff'd, 309 Conn. 482, 71 A.3d 530 (2013). "In determining whether there has

been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Lyons*, 43 Conn. App. 704, 710, 686 A.2d 128 (1996), cert. denied, 240 Conn. 906, 688 A.2d 335 (1997).

"The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . . However, [t]he [c]onfrontation [c]lause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. . . . Thus, [t]he confrontation clause does not . . . suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . Only relevant evidence may be elicited through cross-examination." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Andrews*, 248 Conn. 1, 11, 726 A.2d 104 (1999).

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter." (Internal quotation marks omitted.) *State* v. *Davis*, 298 Conn. 1, 23, 1 A.3d 76 (2010). "The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Reeves*, 57 Conn. App. 337, 345, 748 A.2d 357 (2000).

In the present case, we conclude that the trial court did not abuse its discretion in ruling that defense counsel's inquiry was irrelevant and precluding it on that basis.[8] An abuse of discretion was not manifest when the trial court ruled that defense counsel failed to establish a visible connection between the proffered question and the principal facts in the record. See *State* v. *Davis*,

supra, 298 Conn. 23. Defense counsel presented no evidence that Pearson knew the people on the front porch, that the tenants of the first floor were the people on the porch, or that Pearson even knew the people who lived on the first floor. Therefore, any disputes that Mary Brooks may have had with the first floor tenants would be irrelevant in establishing that Pearson lied because she was afraid of the first floor tenants or of anyone present the night of the murder. After an examination of the facts on the record, we do not quarrel with the trial court's conclusion that the question did not have a logical tendency to aid the jury in determining Pearson's motive or credibility, rendering the question irrelevant. See id.

Because we conclude that the court reasonably could have found that the evidence was not relevant, we conclude that the court did not abuse its discretion when it precluded defense counsel from questioning Pearson about whether she knew of any disputes between Mary Brooks and the first floor tenants. Because we find that the court did not abuse its discretion on the evidentiary issue, the defendant's claim that the trial court's restriction on his cross-examination of Pearson violated his constitutional right to confrontation also fails. See *State* v. *Annulli*, supra, 130 Conn. App. 582.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In the transcript, apart from the defendant, Eric Brooks, and Pearson, the people on the porch the night of the murder were referred to as the "other" people.

[2] To protect the privacy of the juror, we refer to him by his initials. See *State* v. *Newsome*, 238 Conn. 588, 624 n.12, 682 A.2d 972 (1996).

[3] The record is silent as to who made the call and what the caller's objective was.

[4] The following colloquy ensued:

"[Defense Counsel]: No, your Honor, other than I guess I am—I mean, we heard from the last juror . . . that there was some follow-up conversations, which is not surprising. We heard from [one of the jurors] that people were nervous. Obviously, I'm concerned about that, but I'm not too concerned about any of these individuals being affected. They all said [they] weren't. I don't know if there's any way that a very quick investigation could be done and that's just the only thought I had."

"[The Court]: Investigation by who[m]?

"[Defense Counsel]: Well, I don't know.

"[The Court]: And to what end? . . . There may be an investigation when this is all over.

"[Defense Counsel]: Yeah. Yeah. I just—it would be nice if we could— but I guess we can't indicate that it was no one who had anything to do with this case.

"[The Court]: I have no idea.

"[Defense Counsel]: Right, I understand.

"[The Court]: And neither do you and neither does [the state].

"[Defense Counsel]: I understand and I—other than that, the jurors have indicated that they can proceed and I think they should."

[5] At no time did defense counsel articulate (1) what type of investigation he sought, (2) who he thought should conduct the investigation, or (3) when he thought the investigation should take place.

[6] The defendant also asks that we review the claim under the plain error doctrine. "[J]ust as a valid waiver calls into question the existence of a constitutional violation depriving the defendant of a fair trial for the purpose of *Golding* review, a valid waiver also thwarts plain error review of a claim. . . . [T]he [p]lain [e]rror [r]ule may only be invoked in instances of forfeited-

but-reversible error . . . and cannot be used for the purpose of revoking an otherwise valid waiver. This is so because if there has been a valid waiver, there is no error for us to correct. . . . The distinction between a forfeiture of a right (to which the [p]lain [e]rror [r]ule may be applied) and a waiver of that right (to which the [p]lain [e]rror [r]ule cannot be applied) is that [w]hereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." (Citation omitted; internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 70–71, 967 A.2d 41 (2009) (declining to review petitioner's claim under either *Golding* or the plain error doctrine because petitioner waived his claim).

[7] As the state correctly notes, in some cases, the reviewing court will first determine whether the trial court's limitation on cross-examination violated the defendant's constitutional rights before considering whether the trial court abused its discretion in its evidentiary ruling. In accordance with our Supreme Court's precedent, we "may address the claims in whichever order most readily addresses the matter at hand." *State* v. *Annulli*, 309 Conn. 482, 492 n.6, 71 A.3d 530 (2013); cf. *State* v. *Davis*, 298 Conn. 1, 10–11, 1 A.3d 76 (2010). We choose to address the evidentiary ruling first.

[8] Even if we were to conclude that the trial court abused its discretion, which we do not, the limitation on cross-examination was not so severe as to deprive the defendant of his right to confront witnesses guaranteed to him by the sixth amendment. *State* v. *Annulli*, supra, 130 Conn. App. 580. The defendant argues that he was precluded from fully exploring Pearson's credibility. Defense counsel, however, was able to elicit through Pearson on cross-examination, and subsequently argue in summations, that (1) she claimed to not know the people who were on the porch that night even though she "hung out" with them on the porch numerous times prior to the shooting, (2) she saw the "other" people on the porch purchase drugs in front of Mary Brooks' house prior to the night of the murder, (3) she did not see who called Bagley that night, (4) she was the last person to use the defendant's phone, (5) she lied to police on two separate occasions, (6) she spoke with Bagley about purchasing drugs that night in front of people whom she claimed to not know, (7) she avoided speaking with detectives for a number of weeks, (8) she knew that the detectives wanted her to identify the defendant and Eric Brooks when she identified them at the police station, and (9) she had charges pending against her in relation to the murder and was testifying for the prosecution because she wanted to return home to see her son. In short, there was significant evidence on the record to support defense counsel's arguments in summation that Pearson had a "bias, prejudice and interest" in the outcome of the case and that she lied because she was afraid of someone else. See *State* v. *Kehayias*, 162 Conn. App. 310, 328, 131 A.3d 1200 (2016) ("[b]ecause the court in the present case merely limited, and did not preclude, inquiry into a specific motive that already had been robustly developed on cross-examination, the defendant's right of confrontation was not violated").